*246
 
 Ruffik, J.
 

 The question, in this case, is not new to the profession, though it is raised now, for the first time, in the courts of this State. It is, indeed, of recent occurrence any where, and owes its
 
 origin,
 
 or rather prevalence, probably, to the great number of servants needed and employed on the steamboats and railroads, which, have come so much into use in our times, and on which so many casualties or injuries from negligence happen. The leading case upon the subject, is that of
 
 Priestly
 
 v. Fowler, 3 Mees, and Wells, page 1; in which, after an advisari, the opinion of the Court of Exchequer was delivered by Lord Abikgeb, C. B., who presented several strong reasons, founded on policy and social necessity, why a master ought
 
 not to be
 
 liable to one servant for damages arising from the negligence of a fellow servant engaged in the same employment. The point was again made in
 
 Hutchison
 
 v.
 
 The York Rail Road Company,
 
 5 Exch. Rep. 343, when, after another
 
 advisari,
 
 Baron Aldicbsok delivered the opinion of the Court, approving of
 
 Priestly
 
 v.
 
 Fowler,
 
 and laying down the same doctrine and applying it to persons in the same service on a railroad, with the qualification, that the employer must take due care not to expose the servant to unreasonable i'isks. lie states the principle to be, that the servant, when he engages to serve, undertakes, as between him and his master, to run all the ordinary risks of the service, which includes thc-risk of the negligence of a fellow-servant, acting in the discharge of his duty as servant of the common master; hut while the servant undertakes those risks, he has a right to require, that the master shall take reasonable care to protect him by associating him only with persons of ordinary skill and care. Lord Abikgeb takes notice that there was no precedent for such an action, and urges this as an objection to it. The objection seems to be extremely strong, since, if it would lie, there must have been innumerable occasions for it in every day life, and there is one class of cases, in which it might have been often brought for damages arising from great loss and suffering, namely, that of sailors shipwrecked by the nn- ■ sldllfulness, or gross mismanagement of the captain ; and yet
 
 *247
 
 there is no instance of an action, for that, against the owner. Other cases seem to have settled the law in England, and in this country. We find concurring adjudications in every New England State, New York, South Carolina, Georgia, Alabama, and Louisiana, and there may be others, in different States, which we have not been so fortunate as to come across, while there is, as yet, but a single case in this country to the contrary, that of
 
 Little Miami Rail Road Company
 
 v. Stephens, 20 Ohio Rep. 415; and in that, the opinions of the Judges proceed upon opposing reasons. If the opinion of this court had been otherwise upon the point, as an original question, it would not have been possible to resist the authority of such an array of consistent decisions of able courts in both hemispheres, coming so rapidly after each other, with but a single -adjudication against them.
 

 Indeed, the counsel for the plaintiff admitted, that the rule was so thoroughly settled, that it could not be shaken, unless upon the distinction, that the injury complained of in this case, was to the person of a slave. The distinction was put upon the difference between a hired freeman and a slave ; the former being competent to make what terms he chooses in his contract, and to leave the service, if dangerous, at his will, while the latter, by the hiring, becomes the property, temporarily of the hirer, with no will of his own, and is beyond the control of the owner. But the distinction does not seem sound. It might be, if the slave were the person to be benefited, by the recovery. But the action is by the owner for his benefit, and, it is obvious, that it is in his power also, by stipulations in the ■contract, to provide for the responsibility of the bailee for exposing the slave to extraordinary risks, or for his liability to the owner for all losses arising from any cause. It is sufficient protection to his property, as owner, when it is put on the same footing with the protection to a freeman, as the Court thinks it ought to be. In the cases in the courts of the Southern States, already alluded to, the injury was generally to slaves, aud both in those in which the decisions were for, or against the employers, such a distinction was disregarded,
 
 *248
 
 or, rather, not noticed. It would be singular, “ if the owner of a slave could recover for damage sustained by a slave, when upon the same state of facts, the slave, if he had been a freeman, could not have recovered. The case of
 
 Jones
 
 v.
 
 Glass,
 
 13 Ire. Rep. 305, was relied on as a decision of this Court in favor of the action. But that was not the case of fellow servants, in the ordinary sense of the term. It is true, that the overseer and the slave were both serving the same person, but in very different capacities; the slave, there, not only worked with the overseer, but under him, as the superintendent and agent of the master, to control and punish the slave, and thus, in a peculiar degree, representing the master in his authority over the hired slave ; and, therefore, upon the common principle of bailments, the master was responsible to the owner for the injury done to the slave by the overseer while in the service of the employer, as he would have been, had the injury resulted from the act of the hirer himself.
 

 It results from the principles, thus established, that the present action cannot be maintained, as there was no want of ordinary care, on the part of the company, to provide a competent number of persons, fit, or supposed to be fit, to discharge the duties, by the neglect of which the injury arose. There was a man at the switch, or, rather, for it, who failed of due diligence, and caused the damage. But it does notap-pear, that he had ever failed of his duty before, or, if he had, that it ever came to the knowledge of the company or any of its officers who had the direction in that department, or had been suggested to them. The same is to be said of the engineers and conductors, in the selection of whom, and keeping them in the employment of the company, there does not appear to have been any blame. It may be remarked that, among the first cases on this point, in this country, was that of
 
 Farwell
 
 v.
 
 Boston and Worcester R. R. Co.,
 
 4 Metcalf’s Rep. 49, which arose from laches of the same sort that caused the damage here, the displacement of a switch, which threw
 
 *249
 
 off the train, and the engineer, the plaintiff, was injured, but was not allowed to maintain an action against the employer.
 

 Pee Cubiam, Judgment affirmed.