READE and SETTLE, JJ., dissenting.
In his complaint, the plaintiff alleges that he had employed certain laborers, naming them, to work on his farm during the year 1871, under written contracts; and that while they were at (601) work according to the terms of said contract, the defendant, in March of that year, unlawfully enticed and persuaded said laborers to leave his, the plaintiff's employment, and unlawfully harbored and detained them for the space of ten months. For this, plaintiff demands damages, c.
The case states, that after hearing the evidence on both sides and before the case was left to the jury, his Honor decided that the plaintiff was not entitled to recover upon his complaint filed. To which ruling plaintiff excepted, submitted to a nonsuit, and appealed.
The laborers mentioned in the statement of the case were the servants of the plaintiff, and enticing them away from his service or harboring and retaining them, with a knowledge of their obligation to the plaintiff, was injury to him, to be redressed by an action.
1. This is so by the common law. The relation of master and servant has existed from the earliest stages of society. It is recognized both in the 4th and 10th commandments of the decalogue, (602) and is said by Blackstone to be founded in convenience, whereby a person calls in the assistance of others when his skill and labor will not be sufficient to answer the cares incumbent on him. 1 Black. Com., 421. It is constituted by the contract of hiring. Ibid, 425. And as a general rule, every person of full age of 21 years, and not under any legal disability is capable of becoming a master or a servant. Smith on Master and Servant. Law Lib., 75, p. 1.
And beside the relations of the parties to each other, an action lies in favor of the master to recover damages against any person who shall hire or retain his servants, or seduce them away. 1 Black., 429, in text, and note in Sharswood's edition, 6 Mod. R. 182; 1 Parson's Cont., 532, and cases cited. Smith supra. 78, 79, and cases cited.
And although the defendant was ignorant of the first contract when he hired the servant, and no action may lie for enticing him away, yet if he continued to employ or harbor him, after knowledge of the prior engagement an action lies. Ibid 79, 80. Fawcett v. Beavers, 13 N.C. 63; Blake v.Lougee, 6 T. R. 221. For instances of such actions in *Page 486 
N.C. see Harris v. Mabry, 23 N.C. 240; Mabson v. Railroad, 51 N.C. 245.
2 But such an action is given by a recent statute of this State, suggested no doubt by the present condition of labor, especially with reference to agriculture. A. A., 1865-'66, ch. 58, p. 22, 23; A. A. 1866-'67, ch. 124, p. 197, the first giving an action and double damages, the second an indictment.
There have also been adjudications on what constitutes a "cropper," or servant, as contradistinguished from a tenant, who is a quasi proprietor.S. v. Burwell, 63 N.C. 661; Denton v. Strickland, 48 N.C. 61.
3. Compensation to the hired man by a share of the crop, does not render him any the less a servant, nor constitute him a tenant (603) or partner. It is very different from a stipulation for a share of the profits.
In some cases the distinction may be difficult to draw. But in this case there is no difficulty. The direction and control of the whole operations of the year are vested in the plaintiff, with stringent securities, not only for obedience, but for correct and respectful behavior towards him and his family, of all which he is made the judge.
Wherever in such a contract, the will of one party is to control, and the will of the other is subordinated, so that he is to conform his conduct to that control, the former is master and the latter a servant. No degradation is implied. The relation is the result of voluntary contract, and is adopted for the convenience and benefit of both parties.
Two views of the question involved are submitted:
First. Viewed under the doctrine of master and servant: There are a number of cases in which nice distinctions are taken between "tenants" and "croppers; "but without adverting to them, it is submitted that there is one unmistakable criterion deducible from all the cases, namely, has the party other than the land owner an estate in the premises? If not, he is a servant, not a tenant.
The contract under consideration gives full power to the land owner.
1. We submit that the contract specified in the complaint did not create the relation of landlord and tenant, but that Eastwood and the others became thereby mere croppers, and for this we cite McNeely v. Hart,32 N.C. 63; Brazier v. Ansley, 33 N.C. 12.
One who makes a crop for another, vulgice, a cropper, is a servant, *Page 487 
a hired servant, and the circumstance that he is to receive payment in a portion of the crop, instead of money, is of no appreciable weight. If the land owner is to make division, then he pays, (604) and the cropper does not, as in tenancies, pay the land owner as for rent. Wiswall v. Brinson, 32 N.C. 554.
2. Is there any policy of the law which forbids the creation of the relation of master and servant. In free England and the free Northern States, the relation has been recognized from the earliest times.
Society cannot along exist without grades, and the relation of master and servant springs from the earliest and always continuing needs of society, without reference to the character of government. All the elementary writers agree. See 1 Cooley Black, 429, note 15.
Independent of these considerations, the policy of our law has been recognized and declared by two acts of the Legislature, passed since the abolition of slavery. The act of 1865-'66, chap. 58, p. 122, gives an action for enticing or harboring any servant. The act of 1866-'67, chap. 124, p. 197, makes such an act indictable.
Second. But suppose Eastwood and others be treated on the broader ground, not of servants or employees, but of contractors, we submit even on this broad platform the plaintiff has stated a cause of action. Ubi jus ibiremedium. And this jus is not a mere right in conscience, but a legal as well as equitable ground of action, and extends to every legal demand or claim.
Whenever one has suffered damage by the willful act or default of another, a jus accrues, subject on the modification that the injury is proximate. Lumly v. Gye, 2 Ell. Black. 216; Barbee v. Armstead, 32 N.C. 530.
We take it to be a settled principle of law, that if one contracts upon a consideration to render personal services for another any third person who maliciously, that is, without a lawful justification, induces the party who contracted to render the service to refuse to do so, is liable to the injured party in an action for damages. It need scarcely be said that there is nothing in this principle inconsistent with personal freedom, else we would not find it in the (605) laws of the freest and most enlightened States in the world. It extends impartially to every grade of service, from the most brilliant and best paid to the most homely, and it shelters our nearest and tenderest domestic relations from the interference of malicious intermeddlers. It is not derived from any idea of property by the one party in the other, but is an inference from the obligation of a contract freely made by competent persons. *Page 488 
We are relieved from any labor in finding authorities for this principle, by a very recent decision of the Supreme Court of Massachusetts, in which a learned and able Judge delivers the opinion of the Court. Walkerv. Cronin, 107 Mass. 555.
That case was this: The plaintiffs declared in substance that they were shoemakers, and employed a large number of persons as bottomers of boots and shoes, and defendant unlawfully and intending to injure the plaintiff in his business, persuaded and induced the persons so employed to abandon the employment of the plaintiff, whereby plaintiff was damaged, c.
A second count says that plaintiff had employed certain persons named to make up stock into boots and shoes, and defendant well knowing, c., induced said persons to refuse to make and finish such boots and shoes, c.
The third count is not material to be noticed.
The defendant demurred. The Court held each of the counts good.
I shall make no apology for quoting copiously from this opinion, because the high respectability of the Court, and the learning and care with which the question is discussed, make the decision eminently an authority.
"This (the declaration) sets forth sufficiently (1) intentional and willful acts, (2) calculated to cause damage to the plaintiffs in their lawful business, (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendant, (which constitutes malice,) and (4,) actual damage (606) and loss resulting."
"The general principle is announced in Com. Dig. Action on the caseA." In all cases where a man has a temporal loss or damage by the wrong of another, he may have an action upon the case to be repaired in damages." The intentional causing such loss to another, without justifiable cause, and with the malicious purpose to inflict it, is of itself a wrong." SeeCarew v. Rutherford, 106 Mass. 1, 10, 11.
"Thus every one has an equal right to employ workmen in his business or service; and if by the exercise of this right in such manner as he may see fit, persons are induced to leave their employment elsewhere no wrong is done to him whose employment they leave, unless a contract exists by which such other person has a legal right to the further continuance of their services. If such a contract exists, one who knowingly and intentionally procures it to be violated, may be held liable for the wrong, although he did it for the purpose of promoting his own business." *Page 489 
"Every one has a right to enjoy the fruits and advantages of his own enterprise, industry, skill, and credit. He has no right to be protected against competition; but he has a right to be free from malicious and wanton interference, disturbance or annoyance. If disturbance or loss come as a result of competition, or the exercise of like rights by others, it isdamnum absque injuria, unless some superior right by contract or otherwise is interfered with. But if it come from the merely wanton or malicious acts of others, without the justification of competition of the service of any interest or lawful purpose, it then stands upon a different footing, and falls within the principle of the authorities first referred to."
"It is a familiar and well established doctrine of the law upon the relation of master and servant, that one who entices away a servant, or induces him to leave his master, may be held liable in damages therefor, provided there exists a valid contract for continued service known to the defendant. It has sometimes been supposed that the doctrine sprang from the English statute of laborers, and was confined to menial service. But we are satisfied that it is (607) founded upon the legal right derived from the contract, and not merely upon the relation of master and servant, and that it applies to all contracts of employment, if not to contracts of every description.
In Hart v. Aldridge, Cowp. 54, it was applied to a case very much like the present.
In Gunter v. Astor, 4 J. B. Moore, 12, it was applied to the enticing away of workmen not hired for a limited or constant period, but who worked by the piece for a piano manufacturer.
In Shepperd v. Wakeman, Sid. 79, it was applied to the loss of a contract of marriage, by reason of a false and malicious letter claiming a previous engagement.
In Winsmore v. Greenbank, Willes, 577, the defendant was held liable in damages for unlawfully and unjustly "procuring, enticing, and persuading" the plaintiff's wife to remain away from him, whereby he lost the comfort and society of his wife, and the profit and advantage of her fortune.Barbee v. Armstead, 32 N.C. 530.
In Lumly v. Gye, 2 El. Bl., 216 (20 Eng. L. E. R., 168,) the plaintiff had engaged Miss Wagner to sing in his opera, and the defendant knowingly induced her to break her contract and refuse to sing. It was objected that the action would not lie, because her contract was merely executory, and she had never actually entered into the service of the plaintiff; and COLERIDGE, J., dissented, insisting that the only foundation for such an action was the statute of laborers, which did not apply to a service of that character; but after full discussion and *Page 490 
deliberation, it was held that the action would lie for the damage thus caused by the defendant."
To the same effect are Jones v. Jeter, 43 Ga. 331, and Salter v.Howard, Ib. 601, in both which cases the servants enticed were employees in husbandry. The only case to the contrary that we are aware of, is Burgess v. Carpenter, 2 Rich. S.C. 7; but the authorities relied on in that case seem to us not in point. And although this action is not brought under our act of 1866, (Bat. Rev., ch. 70,) yet that act (608) is evidence of the common law.
It is suggested, (for we did not have the benefit of an argument for the defendant,) that in the present case the contract between the plaintiff and Eastwood and Wilkerson is unreasonable and therefore void. We cannot suppose it to be contended that this Court, or any Court, when there is no suggestion of fraud, can inquire whether the reward agreed to be paid to a workman is the highest that he might have got in the market, and to declare the contract void, or to make a new one if it thought not to be the highest. No Court can make itself the guardian of persons sui juris. That would be an assumption inconsistent with their freedom. We suppose the objection to a point to that part of the contract which is, in substance, that if either party of the second part, or any person for whom they contract, shall misbehave in the opinion of the party of the first part, such misbehaving party shall quit the premises and forfeit to the party ofthe first part all his interest in the common crop.
It is said that these provisions make the plaintiff a judge in his own cause, which the law will not allow, and that they are manifestly so oppressive and fraudulent as to avoid the whole contract. This proposition will be found on examination to go much too far even as between the parties to the contract, and to have no application as between one of the parties and a malicious intermeddler, as the defendant must, in this stage of the case, be considered.
It is not necessary to decide what would be the effect of such a stipulation in an action on the contract between the parties to it. But as there seems to be some misconception of the law of such a case, and as although there are numerous authorities on the question, it is not yet of "familiar learning" in our Courts, a few observations will more conveniently lead us to the question actually presented.
The authorities are conclusive that the parties to a contract, if there be no fraud or concealment of the interest, may agree to make a (609) person interested, or even one of the parties an arbitrator to decide all controversies which may arise under the contract, and such agreement will be valid and effectual. *Page 491 
In Watson on Arbitration, (85) it is said: "It seems that it is no objection to an award, that the arbitrator was a party, or interested in the matter submitted, provided that the party objecting, at the time of the submission knew that the arbitrator was so interested; as in the case when Sergeant Hards took a horse from my lord of Canterbury's bailiff for a deodand, and thereupon the Archbishop brought his action, and by a rule of Court it was referred to the Archbishop; to set the price upon the horse; the sergeant afterwards sought to set aside the award, on the ground of the interest of the Archbishop; but it was denied by Lord HALE, and per totam curiam. Comb. 218; S.C., 4; Mod., 226; Hard, 43; 1 Inc. W., 511. See also Russell on Arbitration, 108. In Morse on Arbitration, it is said that a person interested or partial, is incompetent to act as an arbitrator, (p. 100.) But the parties may, if they choose, waive the objection. "They are at liberty to select a person interested or a person prejudiced, a relation, or an enemy of either of them." Strong v. Strong, 9 Cush. 560; Fox v. Hamilton, 10 Pick, 275. See also Morse 108. The most important case on this question, however, is Ranger v. Great Western R. W. Co., 5 H. L. 72. There it was agreed between the plaintiff, who contracted to build the road, and the Company, that Brunel, who was the engineer of the Company, and a large shareholder in it, should be the judge of the amount and value of the work done. The Lord Chancellor, after saying that Brunel was the mere agent of the Company, and in effect the Company itself, continues: "It does not appear to me to be necessary to institute any minute inquiry as to how far the calculations of Mr. Brunel were accurate. I think it quite enough if they were bonafide, and with the intention of acting according to the exigency of the terms of the contract. The Company expressly stipulated that during the progress of the work, the decision of the engineer, as to the value of the work, should be final. If the appellant thought this a harsh or oppressive clause, he ought not to have agreed to it. (610) It does not, however, seem to have been unreasonable." To the same effect, are Elliott v. Southdown R. W. Co., 2 De Gex. Sm. 17;Hawley v. N. S. R, W. C. Id. 33; Kimberly v. Dick, 13 Eq. Cases, 1.
The case of Ranger v. Great Western Railway Company, also holds that penalties and forfeitures upon a contractor, provided for in case the work be not properly done, or done in due time, are reasonable, and will be enforced, even to the great loss of the careless or dilatory contractor.
These authorities unquestionably establish that such stipulations are not void or voidable, even as between the parties, and it has never *Page 492 
been supposed or contended that they made the whole contract void; as even if void themselves, they are clearly separable from the other parts. Either party, therefore, could maintain an action on this contract.
It is important however to notice, that none of these authorities goes to the length of holding, that if after the contractors had duly performed all or a part of the work, the plaintiff had mala fide, or without lawful cause, discharged them, they could not recover upon the contract. The contrary is implied in the language of the Lord Chancellor in Ranger v.Great Western Railway Co., and is evidently most consistent with reason and justice. The power attempted to be reserved cannot have any greater effect than to make the discharge prima facie lawful, if so much as that.
Contracts with such stipulations as we find in the present, are not to be commended as precedents. Such stipulations are unusual; they answer no useful purpose, and suggest an intent (perhaps in this case untruly) to take some improper advantage, and to exact from the employees a degree of personal deference and respect, beyond that civil and courteous deportment which every man owes to his fellow in every relation in life. To this extent, a mutual duty is implied in every contract which creates the relation of master and servant. (611) If the servant fails in due respect, the master may discharge him, and so, if the master fails, the servant will be justified in quitting the employment.
Again it is suggested, that the contractors of the second part in this contract are croppers, and not servants. By cropper, I understand a laborer who is to be paid for his labor by being given a proportion of the crop. But such a person is not a tenant, for he has no estate in the land, nor in the crop until the landlord assigns him his share. He is as much a servant as if his wages were fixed and payable in money.
It is unnecessary to discuss the question whether one who maliciously persuaded a tenant to abandon his holding, would not be liable in damages for such officious intermeddling.
But whatever may be the effect of the provisions commented on, as between the parties to the contract, the authorities are clear and decisive that a person in the situation of the defendant, can take no advantage from them. As the case now stands, he cannot pretend to play the part of a chivalrous protector of defrauded ignorance. For the present at least, he must be regarded as a malicious intermeddler, using the word malicious in its legal sense.
There is a certain analogy among all the domestic relations, and it *Page 493 
would be dangerous to the repose and happiness of families if the law permitted any man, under whatever professions of philanthropy or charity, to sow discontent between the head of the family and its various members, wife, children and servants. Interference with such relations can only be justified under the most special circumstances, and where there cannot be the slightest suspicion of a spirit of mischief-making, or self interest.
To enable a plaintiff to recover from one who entices his servant, it is sufficient to show a subsisting relation of service, even if it be determinable at will. In Keane v. Boycott, 2 H. Bl., 511, the plaintiff sued a recruiting officer for enticing his servant. The servant was an infant and had been a slave in St. Vincents where he indentured himself to serve the plaintiff for five years. The indenture of course was void upon a double ground, but the Court held the plaintiff entitled to recover. EYRE, C. J., says, "The defendant in this case (612)had no concern in the relation between the plaintiff and his servant;he dissolved it officiously, and to speak of his conduct in the mildest terms, he carried too far his zeal for the recruiting service." InSykes v. Dixon, 9 Ad. El., 693, that case is distinguished from Keanev. Boycott, upon the ground that the servant had quitted his master before the defendant employed him, and there was then no subsisting relation of service. In Evans v. Walton, 2 C. P., 615, (E. L. R.) it was held not necessary to show a valid and binding contract for service, but only the existence of the relation. If the servant was one at will, the action could be sustained. Salter v. Howard, 53 Ga., is to the same effect.
We are of opinion that the complaint sets forth a sufficient cause of action.
The judgment is reversed and the case remanded to be proceded [proceeded] in, c. Let this opinion be certified.
PER CURIAM. Judgment reversed.