MARK R. COMAN v. THOMAS MANUFACTURING CO., INC.

No. 491A88

(Filed 26 July 1989)

**Master and Servant § 10.2 — wrongful discharge — employment at will — bad faith and public policy exceptions**

The trial court erred by dismissing plaintiff's action for wrongful termination of his at-will employment as a truck driver after plaintiff refused to violate U. S. Department of Transportation regulations by driving excessive hours and falsifying records. This case comes within the reasoning of *Sides v. Duke University*, 74 N.C. App. 331, and, although plaintiff specifically alleges that defendant's acts violated the regulations of the Federal Department of Transportation, this conduct also violated the public policy of North Carolina as established by 19A NCAC 3D .0801 (1988), N.C.G.S. § 20-397, and N.C.G.S. § 20-384. This Court has never held that an employee at will could be discharged in bad faith; to the contrary, *Haskins v. Royster*, 70 N.C. 601 (1874), recognized the principle that a master could not discharge his servant in bad faith.

**Am Jur 2d, Master and Servant §§ 48.3, 54.**

Justice MEYER dissenting.

APPEAL by plaintiff pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 91 N.C. App. 327, 371 S.E. 2d 731 (1988), affirming dismissal of plaintiff's complaint by *Ross, J.*, at the 25 January 1988 session of Superior Court, DAVIDSON County. Heard in the Supreme Court 15 March 1989.

*Larry L. Eubanks, David F. Tamer, and J. Wilson Parker for plaintiff-appellant.*

*Petree Stockton & Robinson, by W. R. Loftis, Jr., Penni P. Bradshaw, Kenneth S. Broun, and Robin E. Shea, for defendant-appellee.*

*J. Michael McGuinness for North Carolina Civil Liberties Union Legal Foundation, amicus curiae.*

## COMAN v. THOMAS MANUFACTURING CO.

[325 N.C. 172 (1989)]

*J. Wilson Parker and Deborah Leonard Parker for North Carolina Academy of Trial Lawyers, Lacy H. Thornburg, Attorney General, by Jane P. Gray, Special Deputy Attorney General, for North Carolina Department of Justice, Ralf F. Haskell, Special Deputy Attorney General, for John C. Brooks, North Carolina Commissioner of Labor, amicus curiae.*

*Weinstein & Sturges, P.A., by John J. Doyle, Jr. and Joyce W. Wheeler, for North Carolina Trucking Association, amicus curiae.*

*Maupin Taylor Ellis & Adams, P.A., by Robert A. Valois, Thomas A. Farr, and Elizabeth D. Scott, for Capital Associated Industries, Inc., amici curiae.*

MARTIN, Justice.

Plaintiff seeks to recover damages from defendant for wrongfully terminating his at-will employment. The trial judge dismissed the action upon defendant's motion pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure for failure to state a claim upon which relief may be granted. The North Carolina Court of Appeals affirmed, and upon appeal to this Court, we reverse.

This being a dismissal pursuant to Rule 12(b)(6), we look to the allegations of plaintiff's complaint. Essentially, the complaint alleges that plaintiff began working for defendant, a North Carolina corporation, in 1978. He became a full-time employee in 1984 as a long-distance truck driver, hauling goods in defendant's vehicles to various points in the United States and Canada. Plaintiff was based at defendant's plant in Davidson County. The driving operations of the defendant are governed by the United States Department of Transportation. Its regulations provide that a driver, such as plaintiff, cannot drive a vehicle for longer than a ten-hour shift, which must be followed by a rest period of at least eight hours. A driver must also maintain accurate logs of all travel including route traversed, mileage, and amount of time in service. Defendant required plaintiff, and other drivers, to violate the Department's regulations by driving for periods of time in excess of that allowed by the regulations. Plaintiff was also instructed by his employer that he would have to falsify the logs required by the regulations to show that defendant was in compliance with the regulations. Plaintiff was also informed that he would have to continue to drive for periods of time in violation of the regulations if he chose to retain his employment. Upon plaintiff's refusal to violate the regula-

COMAN v. THOMAS MANUFACTURING CO.

[325 N.C. 172 (1989)]

tions, he was told that his pay would be reduced at least fifty percent, such reduction being tantamount to a discharge of plaintiff.

Rule 12(b)(6) and its application are now familiar learning to the bench and bar. *See generally Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970); W. Shuford, *N. C. Civil Practice and Procedure* § 12-10 (3d ed. 1988). It would serve no useful purpose to again repeat the rules applicable to such decisions. Although plaintiff may have some additional remedy in the federal courts,[1] the courts of North Carolina cannot fail to provide a forum to determine a valid cause of action. N. C. Const. art. I, sec. 18 (1984) (open courts clause).

A brief look at the history of the employee-at-will doctrine is appropriate. The English rule prior to our revolution was that an employment without a particular time limitation was presumed to be a hiring for a year. 1 W. Blackstone, *Commentaries* *425. Reasonable notice was required before an employer or employee could terminate the employment. This was said to be in response to the shortage of laborers resulting from the Black Death.

After the revolution, American courts followed the English rule with respect to agricultural and domestic workers, but with the industrial revolution and the development of freedom of contract, our courts moved towards the at-will doctrine. The formulation of the rule was principally the work of Horace Wood, who published in 1877 a work on master-servant relations stating the rule. Subsequent adoption of the rule by the courts greatly facilitated the development of the American economy at the end of the nineteenth century. *See generally* A. Hill, *"Wrongful Discharge" and the Derogation of the At-Will Employment Doctrine*, 31 Labor Relations and Public Policy Series, University of Pennsylvania (1987).

---

1. We note that neither party alleged in the pleadings or argued in its brief before the Court of Appeals or this Court the constitutional issue of preemption by the federal government under the supremacy clause. U.S. Const. art. VI, sec. 2. Nor does the record show that this issue was resolved by the trial judge or the Court of Appeals. Constitutional issues will not be reviewed by this Court unless it affirmatively appears from the record that the issue was raised and passed upon in the court below. *Comr. of Insurance v. Rate Bureau*, 300 N.C. 381, 269 S.E. 2d 547, *reh'g denied*, 301 N.C. 107, 273 S.E. 2d 300 (1980); *Management, Inc. v. Development Co.*, 46 N.C. App. 707, 266 S.E. 2d 368, *disc. rev. denied, appeal dismissed*, 301 N.C. 93, 273 S.E. 2d 299 (1980). This is in accord with the decisions of the Supreme Court of the United States. *Edelman v. California*, 344 U.S. 357, 97 L.Ed. 387 (1953). The issue is not before this Court.

## COMAN v. THOMAS MANUFACTURING CO.

[325 N.C. 172 (1989)]

Ordinarily, an employee without a definite term of employment is an employee at will and may be discharged without reason. *Still v. Lance*, 279 N.C. 254, 182 S.E. 2d 403 (1971). However, the employee-at-will rule is subject to certain exceptions. Statutes may proscribe the discharge of an at-will employee in retaliation for certain protected activities, e.g., filing workers' compensation claims, N.C.G.S. § 97-6.1 (1985); engaging in labor disputes, N.C.G.S. § 95-83 (1985); filing Occupational Safety and Health Act claims, N.C.G.S. § 95-130(8) (1985). *See also* 1 L. Larson, *Unjust Dismissal* § 10.34 (1989).

Our present task is to determine whether we should adopt a public policy exception to the employee-at-will doctrine.[2] Our Court of Appeals, in *Sides v. Duke University*, 74 N.C. App. 331, 328 S.E. 2d 818, *disc. rev. denied*, 314 N.C. 331, 333 S.E. 2d 490 (1985), applied the public policy exception. In *Sides*, the court was reviewing the dismissal of plaintiff's complaint on a Rule 12(b)(6) motion. Sides, an employee at will, alleged that she was discharged from her employment for her refusal to testify untruthfully or incompletely in a court action against Duke Hospital. The Court of Appeals held that the complaint stated a cause of action.

We approve and adopt the following language from *Sides*:

[W]hile there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent.

*Sides v. Duke University*, 74 N.C. App. at 342, 328 S.E. 2d at 826 (1985).

We hold that the case at bar comes within the reasoning of *Sides* and that the complaint states a cause of action for wrongful discharge. Certainly perjury and subornation of perjury differ from operating a truck in violation of federal law and falsifying federal records. However, both offend the public policy of North Carolina.

---

2. Public policy has been defined as the principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good. *Petermann v. International Brotherhood of Teamsters*, 174 Cal. App. 2d 184, 344 P. 2d 25 (1959).

COMAN v. THOMAS MANUFACTURING CO.

[325 N.C. 172 (1989)]

Although plaintiff specifically alleges that defendant's acts violated the regulations of the federal Department of Transportation, this conduct also violated the public policy of North Carolina. N.C.G.S. § 20-384 provides that the Division of Motor Vehicles may promulgate highway safety rules and regulations for interstate and intrastate motor carriers in North Carolina. This has been done in the North Carolina Administrative Code, which provides that the rules and regulations adopted by the federal Department of Transportation in 49 C.F.R. §§ 390-398 shall apply on the highways of North Carolina. 19A NCAC 3D .0801 (1988). Thus, according to plaintiff's allegations when defendant discharged plaintiff, it violated the federal regulations and the public policy of North Carolina as established in the Administrative Code. Further evidence of the public policy of our state regarding the safety of the highways is found in N.C.G.S. § 20-397, which provides criminal penalties for seeking to evade or defeat such regulations.

Moreover, it is the public policy in this jurisdiction that the safety of persons and property on or near the public highways be protected. *See* N.C.G.S. § 20-384 (1988 Cum. Supp.); *Harrell v. Scheidt, Comr. of Motor Vehicles*, 243 N.C. 735, 92 S.E. 2d 182 (1956). Highway safety is one of the paramount concerns of both this state and the nation. At this writing more than 600 people have been killed on the highways of North Carolina during 1989. Actions committed against the safety of the traveling public are contrary to this established public policy.

The state public policy implications in the case at bar are compelling. Our legislature has enacted numerous statutes regulating almost every aspect of transportation and travel on the highways in an effort to promote safety. The actions of defendant, as alleged, impair and violate this public policy. Plaintiff allegedly was faced with the dilemma of violating that public policy and risking imprisonment, N.C.G.S. § 20-397, or complying with the public policy and being fired from his employment. Where the public policy providing for the safety of the traveling public is involved, we find it is in the best interest of the state on behalf of its citizens to encourage employees to refrain from violating that public policy at the demand of their employers. Providing employees with a remedy should they be discharged for refusing to violate this public policy supplies that encouragement.

This Court has never held that an employee at will could be discharged in bad faith. To the contrary, in *Haskins v. Royster*,

**COMAN v. THOMAS MANUFACTURING CO.**

[325 N.C. 172 (1989)]

70 N.C. 601 (1874), this Court recognized the principle that a master could not discharge his servant in bad faith. Thereafter, this Court stated the issue to be whether an agreement to give the plaintiff a regular permanent job was anything more than an indefinite general hiring terminable in *good faith* at the will of either party. *Malever v. Jewelry Co.*, 223 N.C. 148, 25 S.E. 2d 436 (1943) (emphasis added).[3]

Numerous courts have recognized wrongful discharge theories characterized either as the bad faith exception to the at-will doctrine or under the implied covenant of good faith and fair dealing. *See Mitford v. LaSala*, 666 P. 2d 1000 (Alaska 1983); *Cleary v. American Airlines, Inc.*, 111 Cal. App. 3d 443, 168 Cal. Rptr. 722 (1980); *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E. 2d 1251 (1977); *Kerr v. Gibson's Products Co. of Bozeman*, 733 P. 2d 1292 (Mont. 1987); *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A. 2d 549 (1974); 1 L. Larson, *Unjust Dismissal* § 3.05 (1989); H. Perritt, *Employee Dismissal Law and Practice* §§ 1.2, 4.11, 4.23 (2d ed. 1987); Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty To Terminate Only In Good Faith*, 93 Harv. L. Rev. 1816 (1980). Bad faith conduct should not be tolerated in employment relations, just as it is not accepted in other commercial relationships.

Our decision today is in accord with the holdings of most jurisdictions. About four-fifths of the states now recognize some form of cause of action for wrongful discharge. McGuinness, *The Doctrine of Wrongful Discharge in North Carolina: The Confusing Path from Sides to Guy and the Need for Reform*, 10 Campbell L. Rev. 217 (1988). The case of *McClanahan v. Remington Freight Lines*, 517 N.E. 2d 390 (Ind. 1988), is on all fours with the present appeal. There, the employee refused to drive his employer's truck in violation of law. The Indiana Supreme Court held plaintiff had stated a cause of action for wrongful discharge for refusing to commit an unlawful act. Otherwise, the court held, illegal conduct

---

3. Regrettably, the dissent appears to misread *Haskins* and *Malever* as well as this opinion. Clearly, the *Haskins* opinion recognizes the good-faith exception, and Chief Justice Stacy in *Malever* uses the phrase an indefinite general hiring "terminable in good faith" at the will of either party, citing "35 Am. Jur. 460 and 39 C.J. 41." This Court is addressing the issue for the first time, and because this Court, not the legislature, adopted the employee-at-will doctrine in the first instance, it is entirely appropriate for this Court to further interpret the rule. Further, it is important to note that this Court is applying the doctrine in the light of the established public policy and not changing public policy to suit the rule.

COMAN v. THOMAS MANUFACTURING CO.

[325 N.C. 172 (1989)]

by employers and employees would be encouraged. *See also Shaw v. Russell Trucking Line, Inc.*, 542 F. Supp. 776 (W.D. Pa. 1982) (public policy exception allowed where employee refused to drive overweight truck); *Palmer v. Brown*, 242 Kan. 893, 752 P. 2d 685 (1988) (employee fired for disclosing medicaid fraud); *Phipps v. Clark Oil & Refining Corp.*, 408 N.W. 2d 569 (Minn. 1987) (employee fired for refusal to violate Clean Air Act); *Schriner v. Meginnis Ford Co.*, 228 Neb. 85, 421 N.W. 2d 755 (1988) (employee reporting illegal activities of employer); *Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 337 S.E. 2d 213 (1985) (South Carolina Supreme Court followed *Sides* in allowing public policy exception to terminable-at-will doctrine).

Academic scholars also support our action today. *See, e.g.,* 1 L. Larson, *Unjust Dismissal* §§ 6.01-7.09 (1989); *RIA Guide to the Law of Wrongful Termination,* ¶¶ 110,201-110,273 (1989); A. Hill, *"Wrongful Discharge" and the Derogation of the At Will Employment Doctrine,* 31 Labor Relations and Public Policy Series, University of Pennsylvania (1987); McGuinness, *The Doctrine of Wrongful Discharge in North Carolina: The Confusing Path from Sides to Guy and the Need for Reform,* 10 Campbell L. Rev. 217 (1988); Note, *Sides v. Duke Hospital: A Public Policy Exception to the Employment-at-Will Rule,* 64 N.C. L. Rev. 840 (1986).

Although we do not bottom our opinion upon federal public policy, many courts have held that violations of federal public policy may form the basis for a wrongful discharge action in state courts. *E.g., Kilpatrick v. Delaware County S.P.C.A.,* 632 F. Supp. 542 (E.D. Pa. 1986); *McNulty v. Borden, Inc.,* 474 F. Supp. 1111 (E.D. Pa. 1979); *Harless v. First National Bank,* 162 W. Va. 116, 246 S.E. 2d 270 (1978).

In reaching our decision, we have not turned a deaf ear to the warning that we may have spawned a deluge of spurious claims. Our courts have abundant authority to protect employers from frivolous claims, particularly by the imposition of sanctions against attorneys and parties pursuant to Rule 11 of the Rules of Civil Procedure.

The decision of the Court of Appeals is reversed.

Reversed.

COMAN v. THOMAS MANUFACTURING CO.

[325 N.C. 172 (1989)]

Justice MEYER dissenting.

I wish to express at the outset of this dissenting opinion my view that the alleged conduct of the employer in this case cannot be condoned and that if the allegations of the complaint can be proved, the employee should have a remedy and a recovery for his losses and damages in the federal courts. If, in addition to his federal remedy, a state remedy should be provided, it should be provided by our General Assembly and not by judicial legislation of this Court.

Plaintiff has not attempted to pursue any remedies which might be available to him under the federal Surface Transportation Assistance Act of 1982 § 405, 49 U.S.C. app. § 2305(b) (1982). Instead, plaintiff seeks to have the courts of North Carolina recognize a new general "bad faith" exception to the employment-at-will doctrine.

North Carolina strictly adheres to the common law doctrine that employment contracts of indefinite duration are terminable at will. *Presnell v. Pell*, 298 N.C. 715, 260 S.E. 2d 611 (1979); *Still v. Lance*, 279 N.C. 254, 182 S.E. 2d 403 (1971). The core of the doctrine, which has consistently been reaffirmed, is the mutual privilege of employers *and* employees to terminate an employment relationship at either party's election.

We have consistently acknowledged the wisdom of the employment-at-will doctrine. *See, e.g., Smith v. Ford Motor Co.*, 289 N.C. 71, 221 S.E. 2d 282 (1976) (employee fired for "no just cause" had no recourse against employer); *Still v. Lance*, 279 N.C. 254, 182 S.E. 2d 403 (schoolteacher failed to state an action for wrongful discharge when she alleged her discharge was arbitrary and without cause); *Dockery v. Table Co.*, 36 N.C. App. 293, 244 S.E. 2d 272, *disc. rev. denied*, 295 N.C. 415, 246 S.E. 2d 215 (1978) (prior to enactment of the remedial statute, employee did not state a wrongful discharge action when he alleged he was fired in retaliation for filing a workers' compensation claim).

I find the majority's characterizations of *Haskins v. Royster*, 70 N.C. 600 (1874), and *Malever v. Jewelry Co.*, 223 N.C. 148, 25 S.E. 2d 436 (1943), misleading. *Haskins*, an 1874 case, does not, as the majority implies, stand for the proposition that the discharge of an at-will employee must be in *good faith. Haskins* was not even an employee discharge case—it involved a suit by one employer

COMAN v. THOMAS MANUFACTURING CO.

[325 N.C. 172 (1989)]

against another for maliciously enticing away sharecroppers who were employed for the crop year to be paid with a portion of the crop. The only mention of bad faith appears in a discussion of a case involving the discharge of contractors employed to build a road "after the contractors had duly performed all or a part of the work, [where] the plaintiff had [discharged them] *mala fide*, or without lawful cause," and the issue was whether the contractors could recover on the contract. *Haskins*, 70 N.C. at 610. It is misleading to cite *Haskins* for the proposition that "this Court recognized the principle that a master could not discharge his servant in bad faith."

The majority's citation of *Malever* is equally misleading. In *Malever*, the plaintiff was working in Fayetteville for $75.00 a week. The defendant offered him employment in a new store in Charlotte at $50.00 a week. Plaintiff agreed to accept the job at the lesser wage because he would "rather work for less in Charlotte and be at home with his family," but he insisted on a permanent job, not just a "Christmas job." *Malever*, 223 N.C. at 148, 25 S.E. 2d at 436. Defendant assured him it would be permanent. After plaintiff worked eight weeks in Charlotte, defendant closed the new store because it operated at a loss. Plaintiff was discharged and, after a discussion, was paid, in addition to his wages, "$200 in full satisfaction," as suggested by the plaintiff, who assured defendant that he "would be happy about it, and that that would be the end of it." *Id.* at 148, 25 S.E. 2d at 436-37. Plaintiff sued and the Court concluded that plaintiff's employment was terminable at will and held as follows:

> The general rule is, that "permanent employment" means steady employment, a steady job, a position of some permanence, as contrasted with a temporary employment or a temporary job. Ordinarily, where there is no additional expression as to duration, a contract for permanent employment implies an indefinite general hiring, terminable at will. *McKelvy v. Oil Co.*, 52 Okla., 81, 152 P., 414. Here, the plaintiff shows a promise of permanent employment, *simpliciter*, and no more. Anno., 135 A.L.R., 646.

> We find nothing on the record to take the case out of the general rule.

*Id.* at 149, 25 S.E. 2d at 437. There was not the slightest discussion of whether the discharge was required to be "in good faith."

COMAN v. THOMAS MANUFACTURING CO.

[325 N.C. 172 (1989)]

The courts of North Carolina have judicially created but one exception to the employment-at-will doctrine. That exception was established by the Court of Appeals in *Sides v. Duke University*, 74 N.C. App. 331, 328 S.E. 2d 818, *disc. rev. denied*, 314 N.C. 331, 333 S.E. 2d 490 (1985). The plaintiff, Sides, was a nurse anesthetist at Duke University Medical Center. Sides alleged that she had been discharged after she had refused to testify falsely at a medical malpractice trial in which the University was a defendant. The Court of Appeals ruled that Sides had stated a claim for wrongful discharge under theories of both tort and breach of contract. The central principle established by *Sides* is "that no employer in this State, notwithstanding that an employment is at will, has the right to discharge an employee and deprive him of his livelihood without civil liability because he refuses to testify untruthfully or incompletely in a court case." *Id.* at 342, 328 S.E. 2d at 826.

The decision in *Sides* has been strictly construed. "Though the *Sides* court spoke in the broad terms of 'public policy,' its holding was actually very narrow." *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 497-98, 340 S.E. 2d 116, 125, *disc. rev. denied*, 317 N.C. 334, 346 S.E. 2d 140 (1986). The only other reported decision in which a plaintiff has been found to have alleged a valid claim under the *Sides* exception is *Williams v. Hillhaven Corp.*, 91 N.C. App. 35, 370 S.E. 2d 423 (1988). The plaintiff, Williams, testified under subpoena at an unemployment compensation hearing on behalf of a nurse assistant who had been fired by plaintiff's employer. Williams alleged that she was discharged after the hearing because of her truthful testimony in support of the claimant. The Court of Appeals found that Williams' claim fell within the "same narrow exception" created by *Sides* that prohibits employers from discharging employees who refuse to perjure themselves. *Id.* at 39, 370 S.E. 2d at 425. Thus, the only judicially recognized exception to the employment-at-will doctrine involves the refusal or failure to perjure oneself.

The North Carolina General Assembly has created at least five exceptions to the rule that an employer may discharge an at-will employee for any reason or for no reason. Under the Wage and Hour Act, employers are prohibited from discharging an employee for filing a complaint, and employees are entitled to pursue a remedy in state court for such a discharge. N.C.G.S. § 95-25.20 (1985). OSHA expressly prohibits an employer from discharging an

COMAN v. THOMAS MANUFACTURING CO.

[325 N.C. 172 (1989)]

employee for filing a complaint under that statute and provides a remedy for the discharged employee in the form of reinstatement and back pay. N.C.G.S. § 95-130(8), (9) (1985). A remedy in money damages is provided for employees who are denied continuation of employment because of membership in a labor union. N.C.G.S. §§ 95-81, -83 (1985). An at-will employee has a course of action for discharge in retaliation for filing a workers' compensation claim. N.C.G.S. § 97-6.1 (1985). Finally, under the Employment Security Law, any person who discharges or demotes an employee because the employee has testified or been summoned to testify in a proceeding brought under the statute is liable to the aggrieved party in a civil action. N.C.G.S. § 96-15.1 (1988). These are the specific instances to date in which the General Assembly has legislatively created exceptions to the at-will doctrine.

With the exception of employers demanding perjury, North Carolina courts have deferred to the General Assembly in the creation of exceptions to the at-will doctrine. Two Court of Appeals cases and two federal court cases serve to bear this out. In *Trought v. Richardson*, 78 N.C. App. 758, 338 S.E. 2d 617, *disc. rev. denied*, 316 N.C. 557, 344 S.E. 2d 18 (1986), the plaintiff, Trought, was hired by Pitt County Memorial Hospital to serve as vice president for nursing services. Trought alleged that she was discharged because of personnel assignments she implemented to comply with the North Carolina Nursing Practice Act. Trought, unlike Coman, alleged that her discharge violated *state* law (as opposed to federal regulations). Even though Trought's allegations created a disputed factual issue of whether her discharge violated state public policy, the court refused to extend the *Sides* exception to recognize Trought's claim for wrongful discharge.

In *Burrow v. Westinghouse Electric Corp.*, 88 N.C. App. 347, 363 S.E. 2d 215, *disc. rev. denied*, 322 N.C. 111, 367 S.E. 2d 910 (1988), the plaintiff, Burrow, was employed as a tractor-trailer driver. Burrow alleged that he was terminated after he refused to violate federal regulations that prohibit drivers from operating their trucks when they are physically impaired. The Court of Appeals dismissed Burrow's claim of wrongful discharge and stated: "[W]e find no authority for, and decline to adopt, plaintiff's argument that violation of a federal regulation creates an exception to the employment at will doctrine in North Carolina." *Burrow v. Westinghouse Electric Corp.*, 88 N.C. App. at 354, 363 S.E. 2d at 220. The regulations alleged by Burrow and Coman are both contained in subchapter B of

COMAN v. THOMAS MANUFACTURING CO.

[325 N.C. 172 (1989)]

the Federal Motor Carrier Safety regulations. 49 C.F.R. §§ 391.41, 395.1 to 395.13 (1986).

In *Guy v. Travenol Laboratories, Inc.*, 812 F. 2d 911 (4th Cir. 1987), the Fourth Circuit Court of Appeals, applying North Carolina law, held that a former supervisor at a drug manufacturing plant did not state a claim for wrongful discharge by alleging that he was terminated for refusing to falsify records required by federal regulations promulgated by the United States Food and Drug Administration. In *Rupinsky v. Miller Brewing Co.*, 627 F. Supp. 1181 (W.D. Pa. 1986), a United States District Court in Pennsylvania, applying North Carolina law, also refused to recognize a cause of action for wrongful discharge despite plaintiff's argument that his termination was designed to prevent union organization.

The state public policy that gave rise to the *Sides* exception was the threat to our state's judicial system if witnesses could be fired from their employment for refusing to perjure themselves. The compelling reasons that influenced the Court of Appeals to open the courts to a plaintiff discharged for refusing to commit perjury do not exist to justify opening the courts to this plaintiff. No violation of state law is alleged. A federal forum already exists for redress of violations of federal regulations. With the labyrinth of federal regulations which attempt to govern every aspect of commercial life, we can justifiably fear a proliferation of lawsuits under this new exception created by the majority. It will most certainly create an "unwarranted source of trouble in the workplace," if employers must fear a civil action every time an employee at will is terminated. *Burrow v. Westinghouse Electric Corp.*, 88 N.C. App. at 354, 363 S.E. 2d at 220.

The majority has failed adequately to address the legitimate concerns of employers which must be balanced against the advantages to the discharged employee of the additional remedy provided by this new exception. Some of these concerns are: Any exception to the at-will doctrine which exposes him to the possibility of lawsuits makes an employer more reluctant to discharge an employee even if for good reason. Costs are involved in documenting just cause for termination and in producing evidence that an at-will employee was not terminated for a particular improper reason. If an unreliable or incompetent employee is retained out of fear of a lawsuit, morale problems arise which affect co-workers as well as the employer. Employers may be less willing to "take a chance" on a marginal ap-

COMAN v. THOMAS MANUFACTURING CO.

[325 N.C. 172 (1989)]

plicant if termination is made difficult. Employers will be less likely to discharge economically unnecessary employees.

In *Whittaker v. Care-More, Inc.*, 621 S.W. 2d 395 (Tenn. App. 1981), the Tennessee court said this:

> [B]ased upon our review of this area of the law we are compelled to note that any substantial change in the "employee-at-will" rule should first be microscopically analyzed regarding its effect on the commerce of this state. There must be protection from substantial impairment of the very legitimate interests of an employer in hiring and retaining the most qualified personnel available or the very foundation of the free enterprise system could be jeopardized.
>
>      . . . Tennessee has made enormous strides in recent years in its attraction of new industry of high quality designed to increase the average per capita income of its citizens and thus, better the quality of their lives. The impact on the continuation of such influx of new businesses should be carefully considered before any substantial modification is made in the employee-at-will rule.

*Id.* at 396-97. The decision of the majority may indeed have an effect on the economic vitality of our state, particularly on the recruitment of new industry.

The legislature, and not this Court, is the proper body to make the appropriate analysis and strike a proper balance. Any abrogation of the at-will doctrine will necessarily require "line-drawing." As the appellee's brief points out, a large corporation such as IBM should probably be treated differently from the corner grocery store. And what should be done with the great bulk of employers who fall in between? Should arbitration be required in all or some cases? Should employees be treated differently depending on their longevity or their level of employment within the company? Should punitive damages be allowed? The commentators are in almost universal agreement that juries are unduly sympathetic to employees and unable to understand the management considerations necessary in terminating an employee. *See* Comment, *Employment at Will: Just Cause Protection Through Mandatory Arbitration*, 62 Wash. L. Rev. 151 (1987); Harrison, *The Price of the Public Policy Modification of the Terminable-at-Will Rule*, 34 Lab. L.J. 581 (1983).

COMAN v. THOMAS MANUFACTURING CO.

[325 N.C. 172 (1989)]

While the source of the rule may be questionable, a number of our cases have stated the doctrine in this manner: Where a contract of employment does not fix a definite term, it is terminable at the will of either party, with or without cause, except in those instances in which the employee is protected from discharge by statute. This precise language appears in each of the following cases: *Smith v. Ford Motor Co.*, 289 N.C. 71, 80, 221 S.E. 2d 282, 288; *Buffaloe v. United Carolina Bank*, 89 N.C. App. 693, 695, 366 S.E. 2d 918, 920 (1988); *Harris v. Duke Power Co.*, 83 N.C. App. 195, 197, 349 S.E. 2d 394, 395 (1986), *aff'd*, 319 N.C. 627, 356 S.E. 2d 357 (1987); *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 497, 340 S.E. 2d 116, 125, *disc. rev. denied*, 317 N.C. 334, 346 S.E. 2d 140 (1986). *See also* 8 Strong's N.C. Index 3d *Master and Servant* § 10 (1977).

While it may legitimately be argued that the employment-at-will doctrine was judicially created and thus may be judicially altered for sound legal reasons, it should not be altered by the courts for reasons of "public policy." Courts are ill-equipped to determine what the public policy is or should be, whereas that is a basic reason for the existence of our legislature. Whether our economy should be burdened with a bad faith exception to the employment-at-will doctrine on "public policy" grounds is a question that under our Constitution must be decided, if at all, by our state legislature. *Power Co. v. Membership Corp.*, 256 N.C. 62, 64, 122 S.E. 2d 782, 784 (1961) ("Courts have no right to usurp legislative powers and by judicial decrees formulate public policy not declared by the Legislature"); DeFranco, *Modification of the Employee at Will Doctrine—Balancing Judicial Development of the Common Law with the Legislative Prerogative to Declare Public Policy*, 30 St. Louis U.L.J. 65 (1985). *See also Henson v. Thomas*, 231 N.C. 173, 176, 56 S.E. 2d 432, 434 (1949) ("The 'excelsior cry for a better system' in order to keep step with the new conditions and spirit of a more progressive age must be made to the Legislature, rather than the courts").

The California courts played a leading role in the recognition and development of the tort action for breach of an implied covenant of good faith as an exception to the employment-at-will doctrine. As could be expected, a trend of high verdicts and expensive settlements developed because of jury sympathy for plaintiffs who have been discharged from their jobs. This climate existed in California for a number of years. However, the Supreme Court of Cali-

COMAN v. THOMAS MANUFACTURING CO.

[325 N.C. 172 (1989)]

fornia, disapproving of long lines of court of appeals cases, has recently held that a tort claim for wrongful discharge alleging an implied covenant of good faith would no longer be recognized. Therefore, the tort action for wrongful discharge and the possibility of punitive damages was put to rest in California. *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 765 P. 2d 373, 254 Cal. Rptr. 211 (1988). In that same case, the California court refused to extend any exception to the employment-at-will doctrine to employment contracts on public policy grounds, even in breach of contract actions (where punitive damages are not available) alleging a breach of good faith. As one writer has noted, "Concern for maintaining the predictability of contract costs and the stability of the business community supported the majority's decision to defer the problem to the legislature." Bushman, *Wrongful Discharge*, Case and Com., May-June 1989, 3, at 6.

With regard to the statement of the majority that "our decision today is in accord with the holding of most jurisdictions," I note that the California court in *Foley* said this:

In fact, although Justice Broussard asserts that the weight of authority is in favor of granting a tort remedy, the clear majority of jursidictions [sic] have either expressly rejected the notion of tort damages for breach of the implied covenant in employment cases or impliedly done so by rejecting any application of the covenant in such a context.

*Foley*, 47 Cal. 3d at 686, 765 P. 2d at 391, 254 Cal. Rptr. at 229 (citation omitted).

It seems that the majority has outraced even the California court.

I vote to affirm the decision of the Court of Appeals.