Joseph BURCH, Plaintiff,

v.

PHILIP MORRIS USA, INC., Defendant.

No. 1:02 CV 01124.

United States District Court, M.D. North Carolina.

Jan. 22, 2004.

Roger Wade Rizk, Charlotte, NC, for Plaintiff.

Jacqueline M. Yount, Wood W. Lay, Hunton & Williams, Charlotte, NC, for Defendant.

## JUDGMENT

OSTEEN, District Judge.

On December 17, 2003, the United States Magistrate Judge's Recommendation was filed and notice was served on the parties pursuant to 28 U.S.C. § 636. No objections were filed within the time limits prescribed by Section 636.

Therefore, the Court need not make a *de novo* review and the Magistrate Judge's Recommendation is hereby adopted.

**IT IS THEREFORE ORDERED AND ADJUDGED** that defendant's motion for summary judgment (docket no. 12) is granted and that this action be, and the same hereby is, dismissed.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

ELIASON, United States Magistrate Judge.

Plaintiff alleges he was wrongfully terminated. The matter is now before the Court on defendant's motion for summary judgment. Plaintiff opposes that motion which has been fully briefed and is now ready for decision.

### Facts

The undisputed, relevant facts of the case, as shown by the evidence in the record, are as follows. Plaintiff is an African American male who was employed by defendant from 1996 until his termination on October 23, 2001. On October 19, 2001, plaintiff reported to work at defendant's "Cabarrus facility" four hours before his scheduled shift was to begin. He did this in order to work overtime prior to starting his regular shift.

Employees working overtime as plaintiff was are allowed one 15 minute break and cannot leave the facility without authoriza-

tion. Although this rule was listed in defendant's handbook and displayed from time to time in the plant where plaintiff worked, plaintiff claims that he did not receive a handbook and did not know of the rule.[1] In any event, it is undisputed that plaintiff did leave the plant in his vehicle at some point during the overtime shift. He makes no claim that he had permission to do so.

Upon returning to the plant, plaintiff was involved in an incident in which a security guard claimed that plaintiff failed to stop and properly display an identification card at the entrance to the parking lot. The guard reported this incident to plaintiff's supervisor, Gary Moss, who then noticed that it occurred at a time when plaintiff was not allowed to leave the facility without authorization. Moss immediately suspended plaintiff. He later verified the time of the incident and talked with his own supervisor Jim Zahn. Moss and Zahn, along with Charles Walker of defendant's Human Resources Department, then decided to terminate plaintiff's employment. Plaintiff was informed of his termination on October 23, 2001.

At the time of plaintiff's termination, he was covered by a collective bargaining agreement and was a member of the International Association of Machinists and Aerospace Workers (the Union). As will be discussed later in more detail, this collective bargaining agreement set out the terms and conditions of plaintiff's employment, including those regarding termination. When plaintiff learned of his termination, he and the Union immediately filed a grievance asking that he be reinstated. This grievance was denied by defendant at the second and third steps of the disciplinary process. However, at the third step, defendant did offer to allow plaintiff to return to work with the same position, pay, and benefits if he signed a "last chance" agreement. Plaintiff refused and the termination remained in effect. When the Union declined to take plaintiff's grievance to arbitration, plaintiff filed this lawsuit.

### Plaintiff's Claims

Plaintiff's suit, which was originally filed in state court and removed to this Court by defendant on the basis of diversity jurisdiction, states only a single claim for wrongful discharge in violation of public policy under state law. Plaintiff raises this claim by making the allegation that his discharge was racially motivated.[2] It was less than clear from simply reading plaintiff's complaint whether it also raised further state law claims such as hostile work environment, retaliation, or general disparate treatment in violation of public policy. However, plaintiff states in his response to defendant's motion for summary judgment that he is not pursuing claims for hostile work environment, retaliation, or general disparate treatment. He only included allegations which might seem to support such claims in order to show that a general racially hostile atmosphere existed in defendant's Cabarrus facility and that this environment ultimately resulted in his termination because of his race. Therefore, plaintiff has affirmatively stated that he is

1. Defendant has placed into evidence a form which plaintiff initialed indicating that he received a handbook at the start of his employment with defendant. Plaintiff has not explained the discrepancy of this fact with his testimony.

2. Although the Court need not reach the merits of the controversy, the crux of plaintiff's racial discrimination claim appears to be based on the fact that other employees, whites and likely blacks, violated the policy but were not terminated. It appears plaintiff was terminated because he was caught, whereas others, including whites, were not. (Pl. Unnumbered Brief. at p. 10)

pursuing only the single wrongful discharge claim. However, as will be seen, none of these claims would fare any better than his claim of wrongful discharge. Defendant has moved for summary judgment as to that claim.

### Summary Judgment Standards

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the evidence in a light most favorable to the non-moving party. *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990). When opposing a properly supported motion for summary judgment, the party cannot rest on conclusory statements, but must provide specific facts, particularly when that party has the burden of proof on an issue. *Id.* The mere fact that both parties request summary judgment does not necessarily mean that the material facts are undisputed. *World–Wide Rights Ltd. Partnership v. Combe Inc.*, 955 F.2d 242, 244 (4th Cir.1992). "The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, *in the form of admissible evidence*, that could carry the burden of proof of his claim at trial." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir.1993) (emphasis added). A mere scintilla of evidence will not suffice. Rather, there must be enough evidence for a jury to render a verdict in favor of the party making a claim. A few isolated facts are not sufficient. *Sibley v. Lutheran Hosp. of Maryland, Inc.*, 871 F.2d 479 (4th Cir.1989).

■■■ Because plaintiff's claim arises under state law, special rules apply. When state law is unclear, the federal court must rule in such a manner as it appears the highest state court would rule if presented with the issue. Where the state's highest court has not decided the particular issue, the federal court should examine the rulings of the lower state courts. Rulings of the lower courts may be considered as persuasive evidence of state law, but they are not binding on the federal court should it be convinced the highest court would rule to the contrary. *Sanderson v. Rice*, 777 F.2d 902, 903 (4th Cir.1985), *cert. denied*, 475 U.S. 1027, 106 S.Ct. 1226, 89 L.Ed.2d 336 (1986). Furthermore, the federal court must rule on state law as it exists, as opposed to surmising or suggesting an expansion of state law. *Burris Chemical, Inc. v. USX Corp.*, 10 F.3d 243 (4th Cir.1993).

### Discussion

■■■ Defendant's primary argument in support of its motion for summary judgment is that plaintiff's wrongful discharge claim is simply not allowed under North Carolina law. The general rule in North Carolina is that it is an "at will" employment state, meaning that employees can be fired at any time and for any reason (or even no reason) by an employer. *Still v. Lance*, 279 N.C. 254, 182 S.E.2d 403 (1971). However, an exception to the "at will" rule has been allowed where the termination in question violates public policy. *Coman v. Thomas Manufacturing Co., Inc.*, 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989). Moreover, the North Carolina legislature has explicitly stated that it is the public policy of the State of North Carolina that persons have the right to "obtain and hold employment without discrimination or abridgment on account of race ...." N.C. Gen.Stat. § 143–422.2. Therefore, employees who would normally be "at will" employees in North Carolina can maintain an action for wrongful termination on account of their race. *Jackson v. Blue Dolphin Communications of North*

*Carolina, L.L.C.*, 226 F.Supp.2d 785, 791–92 (W.D.N.C.2002). It is this type of claim that plaintiff wishes to pursue in this case.

■ Unfortunately for plaintiff, the availability of a cause of action under North Carolina law for wrongful termination has been limited by its courts to include only "at will" employees. *Trexler v. Norfolk Southern Railway Co.*, 145 N.C.App. 466, 470, 550 S.E.2d 540, 542 (2001). Employees terminated under a contract or collective bargaining agreement who can be terminated only for "just cause" must file suit for breach of contract, rather than pursue a tort action based on wrongful termination. *Id.; Freeman v. Duke Power Co.*, Nos. 1:00CV00665, 1:02CV00630, 2003 WL 21981291 (M.D.N.C. Aug. 15, 2003) (unpublished). Essentially, a person who is not an "at will" employee cannot take advantage of an exception to the "at will" rule. Such a person has chosen to have his employment governed by a contract instead. Defendant claims that plaintiff is just such an employee because he was covered by a collective bargaining agreement that specified termination for "just cause."

Plaintiff does not disagree with the correctness of the legal analysis set out above. However, he does contend that it does not apply to him because the collective bargaining agreement does not allow for termination for only "just cause." Alternatively, he argues that plaintiff's termination was also governed by his employee handbook which does not state that termination is allowed only for "just cause." Finally, plaintiff notes that the collective bargaining agreement contains a provision prohibiting discrimination on the basis of race and reasons that the agreement must, therefore, allow the filing of a legal action to enforce this policy.[3]

Plaintiff's argument that the collective bargaining agreement does not require "just cause" in order to terminate an employee is based on Article XXIV of the agreement which states that "Employees may be disciplined or discharged for just cause." Plaintiff believes that, either because the word "may" is used or because the sentence does not exclude the possibility that other standards may be used, this provision does not limit the standard for termination to "just cause." For this reason, plaintiff claims that he is not a person who cannot bring a wrongful termination claim under North Carolina law.

The language relied on by plaintiff does not, on its face, support his argument. That ends the matter. Even assuming, solely for the sake of argument, that the provision relied on by plaintiff is somehow ambiguous as to whether a standard other than "just cause" could be used to terminate a covered employee, plaintiff has produced no evidence, only argument, supporting his interpretation of the language.

He argues that the clause is ambiguous because it does not say that an employee can *only* be discharged for just cause. However, it would make no sense to interpret the language to mean that an employee can be discharged for just cause and also for less than just cause or for more

---

**3.** As stated by defendant in its reply brief, it appears that plaintiff's arguments concerning the interpretation of the collective bargaining agreement cause his claim to be preempted under Section 301 of the Labor Management Relations Act. *See Freeman v. Duke Power Co.*, Nos. 1:00CV00665, 1:02CV00630, 2003 WL 21981291 (M.D.N.C. Aug. 15, 2003) (unpublished), *applying Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). If so, dismissal of the claim is proper. *Id.* However, because defendant has not fully briefed or argued preemption, the Court will proceed to address plaintiff's interpretation arguments. Additionally, the Court notes that plaintiff has not made any claim that he wishes to, or even could, pursue a cause of action under federal labor law. If anything, his complaint appears aimed at studiously avoiding such claims.

than just cause. Also, defendant shows that both the company and the union interpret the language as requiring a discharge to be for just cause. (Docket No. 15, Ex. P, Cousar Decl. ¶ 2) Nor does the employee handbook alter the contract language. It merely informs an employee who walks off the job that immediate suspension will result and if a violation is proven, termination will follow. In other words, it merely informs the employee that the employer considers walking off the job to be just cause for termination. Moreover, any ambiguity in the contract would require plaintiff to have pursued his contract remedies to secure an interpretation (*see* n. 3, *supra*). He may not ask this Court to interpret the contact in this lawsuit.

Defendant, on the other hand, has produced evidence in the form of a declaration and an arbitration decision showing that it and the Union interpret the agreement to require "just cause" for the termination of a covered employee. (Docket No. 15, Ex. P., Cousar Decl. ¶¶ 3–6 & Ex. 1) In light of defendant's evidence and plaintiff's lack of contrary evidence, it is apparent that the collective bargaining agreement does establish a "just cause" standard for the termination of covered employees.

Not only does the evidence cited by defendant dispose of plaintiff's first argument, but it ends his second one as well. The arbitration opinion provided by defendant pertains to an employee fired for violating one of the items listed on the same page of the employee handbook that sets out plaintiff's alleged violation. In the arbitration decision it is abundantly clear that the case was evaluated using a "just cause" standard. Further, plaintiff himself contested his firing through the grievance process set up by the collective bargaining agreement. He cannot now seriously argue that his termination somehow occurred outside that agreement or under a different standard.

Plaintiff's final argument concerning the anti-discrimination provision in the collective bargaining agreement fares no better. Plaintiff asserts that this provision must allow for some cause of action. It may well be that plaintiff can base a suit on the anti-discrimination provision of the collective bargaining agreement. However, as noted by the court in *Trexler*, this would be an action for breach of contract, not an action for the tort of wrongful termination. The state law contract claim, in turn, would be preempted by federal law. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Freeman, supra.* In the end, it is apparent that plaintiff wished to avoid this result by pleading his complaint in the fashion that he did. However, he cannot succeed in his attempt to avoid the reality that he is not an "at will" employee and so, under the rule set out in *Trexler*, cannot raise a claim for wrongful termination under North Carolina law. As defendant correctly points out, plaintiff needed to bring an action under federal labor law, but has declined to do so. Defendant's motion should be granted. Also, because the case can be decided purely on the basis of defendant's argument that plaintiff has failed to state a proper claim for relief, no discussion of the merits of his case is necessary.[4]

4. The Court notes that if plaintiff had been found to have stated a claim under state law, the Court would have been unable to decide it on the merits without having plaintiff's counsel first rebrief plaintiff's response to defendant's motion. Although that response contains some cites to the record, many are general cites covering multiple pages. Several span 50 or more pages of deposition testimony and some of those pages do not appear to even be in the record before the Court. Plaintiff filed no exhibits in support of his case and should not have relied on deposition testimony placed in the record by defendant because it contained only portions of the de-

IT IS THEREFORE RECOM-MENDED that defendant's motion for summary judgment (docket no. 12) be granted and that Judgment be entered dismissing this action.

position pages cited by plaintiff. In future cases, the Court will expect much more specific cites to the record and will expect that information cited to will be contained in the record.