Patricia L. **STRICKLAND**, Plaintiff,

v.

**MICA INFORMATION SYSTEMS, David Anderson, and Harriet Anderson, Defendants.**

No. C–89–924–WS.

United States District Court, M.D. North Carolina, Winston–Salem Division.

Feb. 28, 1992.

Katherine A. Mewhinney, B. Ervin Brown, II, Winston–Salem, N.C., for plaintiff.

Robin E. Shea, Winston–Salem, N.C., for defendants.

## MEMORANDUM OPINION

TILLEY, District Judge.

Plaintiff Patricia L. Strickland ("Strickland") filed this lawsuit against Defendants MICA Information Systems, David Anderson and Harriet Anderson (collectively "MICA"). The complaint alleges that: (1) MICA violated the Fair Labor Standards Act (FLSA) § 215 by discharging her in retaliation for her pursuit of a complaint with the Department of Labor; (2) MICA violated the FLSA § 207 by not compensating her for overtime; (3) MICA violated N.C.Gen.Stat. § 95–25.8 (1989) by deducting money from her salary for absences; (4) MICA wrongfully discharged her in violation of North Carolina law; and (5) MICA breached the employment contract between MICA and Strickland, in violation of North Carolina law. MICA has moved for summary judgment on the action, pursuant to Fed.R.Civ.P. 56. For the reasons stated herein, MICA's motion is PARTLY GRANTED AND PARTLY DENIED.

### I.

MICA has moved for summary judgment on each of Strickland's claims. A motion for summary judgment should be granted when, after reviewing all of the record, it is found that there is no genuine issue of material fact and the case should be decided as a matter of law. *See* Rule 56, Fed.R.Civ.P. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Strickland's claims will withstand a summary judgment motion if evidence, properly forecast, would be sufficient to withstand a motion for a directed verdict. *See Herold v. Hajoca Corp.*, 864 F.2d 317, 319 (4th

Cir.1988), *cert. den.* 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989).

The facts, viewed most favorably to Ms. Strickland, may be stated as follows:

Defendant MICA Information Systems sells computer packages to physicians. Defendants David and Harriet Anderson, husband and wife, own MICA. Plaintiff Strickland was employed by MICA as manager of customer services from August 17, 1989 to October 4, 1989, when she was discharged. Two days prior to Strickland's termination, as a follow-up to a memorandum drafted previously by Strickland, Strickland told David Anderson either that she was requesting information from the Department of Labor or had already filed a complaint with the Department of Labor on the issue of questionable pay deductions. The next day, Strickland and Harriet Anderson had a heated exchange. That evening the Andersons decided to discharge Strickland, which they did the next day.

## II.

### A. FEDERAL RETALIATION CLAIM

MICA first seeks summary judgment on Strickland's federal claim of discharge based on retaliation in violation of the FLSA, particularly 29 U.S.C. § 215(a)(3). Section 215(a)(3) provides that it shall be unlawful for any person

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]

29 U.S.C. § 215(a)(3).

"Where the immediate cause or motivating factor of a discharge is the employee's assertion of statutory rights, the discharge is discriminatory under § 215(a)(3), whether or not other grounds for discharge exist." *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 181 (8th Cir.1975). *See also Love*

*v. RE/MAX of America, Inc.*, 738 F.2d 383, 385 (10th Cir.1984).

Courts have determined that the order of proof for retaliation claims made under FLSA is the same as that made under Title VII. *See e.g. Brock v. Richardson*, 812 F.2d 121, 123, n. 1 (3d Cir.1987) (Third Circuit held that the order of proof is the same with FLSA and the Age Discrimination in Employment Act which is governed by the three part division set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) for Title VII cases. (citing *Dreyer v. Arco Chemical Co.*, 801 F.2d 651, 653 (3d Cir.1986))); *Caryk v. Coupe*, 663 F.Supp. 1243, 1253 (D.D.C.1987); *Sims v. Mme. Paulette Dry Cleaners*, 580 F.Supp. 593, 595 (S.D.N.Y.1984); *Donovan v. Schoolhouse Four, Inc.*, 573 F.Supp. 185, 189 (W.D.Va.1983); *Pedreyra v. Cornell Prescription Pharmacies, Inc.*, 465 F.Supp. 936, 948 (D.Colo.1979). A plaintiff may show retaliation by direct evidence or indirectly through a *McDonnell Douglas* type proof scheme. In order to establish, indirectly, a prima facie case of retaliatory action under the FLSA, a plaintiff must demonstrate that (1) the employer was aware of plaintiff's participation in protected activity; (2) that an adverse employment action was taken against the plaintiff engaged in the protected activity; and (3) that the two elements are related causally. *Caryk*, 663 F.Supp. at 1253. If a prima facie case is shown, the employer has the opportunity to state legitimate nondiscriminatory reasons for taking the adverse action. *Id.* If the employer gives legitimate nondiscriminatory reasons, the plaintiff can still prevail if she can demonstrate that the employer's reasons are mere pretext for discrimination taken in retaliation for participation in protected activities. *Id.*

MICA argues that Strickland cannot meet the legal elements for a prima facie case of retaliation under § 215(a)(3) because she cannot show any causal connection between the protected activity and her discharge.[1] A causal connection may be

---

1. MICA does not dispute that Strickland was

engaged in protected activity and that she was

demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action. *Burrus v. United Telephone Co. of Kansas, Inc.*, 683 F.2d 339, 343 (10th Cir.1982). According to the evidence forecast in this case, dismissal followed within two days after MICA received notice that plaintiff was engaged in protected activity. Deciding whether that alone is sufficient to create a genuine issue (i.e. sufficient to withstand a motion for a directed verdict) on the motivation for Strickland's dismissal is unnecessary. The extremely short time period coupled with a factfinder's negative assessment of the credibility of witnesses who would deny that motivation would be sufficient to support a jury's verdict. This is why courts have cautioned against granting motions for summary judgment and directed verdicts in discrimination cases where motive and causation are at issue. *See Herold v. Hajoca*, 864 F.2d at 319 (citing *Taylor v. Home Insurance Company*, 777 F.2d 849, 854 (4th Cir.1985), *cert. den.* 476 U.S. 1142, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986)).

Although Strickland has met the prima facie case threshold, MICA has articulated a legitimate reason for her discharge. MICA states that Strickland had a confrontational, belligerent attitude towards customers and co-workers and that it was for this reason that she was terminated. With the exception of one instance, however, Strickland has presented affidavits and deposition testimony which contradicts MICA's assertions. Strickland concedes that she was once rude to a customer; however, when she attempted to resign following that incident, MICA persuaded her to remain if she agreed to make some changes in her attitude. This is sufficient to create a genuine issue of pretext.

MICA's motion for summary judgment on this claim will be DENIED.

### III.

### FEDERAL OVERTIME PROVISION VIOLATION CLAIM

■ MICA next argues that it should be granted summary judgment on the claim that MICA violated the overtime provisions of the FLSA. Strickland claims that she was an employee who was covered under the maximum hours provision of the FLSA, 29 U.S.C. § 207, which requires that, for any work done in excess of forty hours per week, she be compensated at a rate not less than one and one-half times the regular rate at which she employed. Citing § 213 of the FLSA, MICA argues that Strickland was not entitled to overtime pay. In § 213 the Secretary of Labor has identified certain classifications of individuals, including those paid on a salary basis, who are not covered by § 207. MICA argues that because Strickland was paid on a salary basis, within the meaning of a regulation established by the Secretary pursuant to § 213, namely 29 C.F.R. § 541.118(a), Strickland is exempt from § 207.[2] Section 541.118(a) defines "salary basis" as follows:

> An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in

---

discharged after her participation in the protected activity. While there is some dispute about whether Strickland told Defendant David Anderson that she was filing a complaint or merely requesting information from the Department of Labor, either action suffices as a protected activity under the Fair Labor Standards Act. 29 U.S.C. § 215(a)(3). *See Brock v. Richardson*, 812 F.2d 121, 123 (3d Cir.1987); *Prewitt v. Factory Motor Parts, Inc.*, 747 F.Supp. 560 (W.D.Mo.1990) (making a phone call requesting information from Wage and Hour Division of Department of Labor is protected activity).

**2.** Although MICA does not state that it would classify Strickland's position as "administrative" according to 29 C.F.R. § 541.2, Strickland and this Court interprets Strickland's position to be administrative because she did not have the authority to hire or discharge employees. This regulation requires that the employee be "compensated for his services on a salary or fee basis." § 29 C.F.R. § 541.2(e)(1).

the quality or quantity of the work performed. Subject to the exceptions provided below, *the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked.* Section 541.118(a). (Emphasis added)

The forecast of evidence shows that MICA routinely docked Strickland's pay for time spent away from the office. Therefore, Strickland did not receive her full salary some weeks in which she performed some work. § 541.118(a) is not applicable to Strickland, she is not on a salary basis, and is not exempted from overtime under § 213.

 Nonetheless, MICA argues that Strickland was not authorized to work overtime. In order for an employee to recover for uncompensated overtime work under FLSA, she must show that her employer had knowledge, either actual or constructive, of her overtime work. *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986). Furthermore, the employee must prove that she worked overtime hours without compensation, and she must also show the amount and extent of her overtime work as a matter of just and reasonable inference. *Id.*

To show that MICA had authorized her overtime work, Strickland points to a conversation between the Andersons and herself. This conversation was held during her interview for the position for which she was hired. Strickland recalled in her deposition that during that conversation, she stated, "I would move to Winston–Salem because as a manager, I'd give more of my time on weekends, and if I had to commute, I could not give much of my time after hours and on weekends unless I'm 10 to 15 minutes away from my job." Strickland argues that if it was MICA's intention not to authorize overtime, they should have informed her at that time. This statement is not enough to make the issue genuine. The statement merely shows that Strickland expressed a willingness to work overtime. Strickland has presented no evidence that MICA had any knowledge that she actually worked overtime. Furthermore,

Strickland has presented no evidence which shows she worked overtime hours without compensation or the amount or extent of her overtime work. MICA is, therefore, entitled to summary judgment on the FLSA overtime provision claim.

## IV.

### NORTH CAROLINA DEDUCTION OF WAGES CLAIM

 MICA next argues that they are entitled to summary judgment on the issue of whether they violated N.C.Gen.Stat. § 95–25.8 (1989). Section 95–25.8 provides that an employer may withhold any portion of an employee's wages in two situations: (1) when the employer is required or empowered to do so by State or Federal law, or (2) when the employer has a written authorization from the employee. MICA argues that because it has not violated FLSA with respect to its policy of making deductions for time not worked, then it has also not violated § 95–25.8. Assuming *arguendo* that MICA has not violated FLSA deduction of pay for time not worked provisions, it does not follow that MICA is either required or empowered to make such deductions. MICA cites no State or Federal law which gives it such authority. Furthermore, Strickland states that she never authorized pay deductions in a signed writing and MICA has presented nothing to show that she did.

## V.

### NORTH CAROLINA WRONGFUL DISCHARGE AND BREACH OF CONTRACT CLAIMS

MICA also seeks summary judgment upon Strickland's tort claim for wrongful discharge and upon her breach of contract claim. MICA argues that there can be no wrongful discharge or breach of contract because Strickland is a terminable-at-will employee.

#### A.

#### WRONGFUL DISCHARGE

 The general rule in North Carolina is that an employee with an indefinite

term of employment is an employee at will and may be discharged without reason. *Coman v. Thomas Mfg. Co., Inc.,* 325 N.C. 172, 175, 381 S.E.2d 445, 446 (1989). There are exceptions, however, to this general rule. In *Coman,* the North Carolina Supreme Court recognized a public policy exception, citing with approval from *Sides v. Duke University,* 74 N.C.App. 331, 328 S.E.2d 818, *disc. rev. denied,* 314 N.C. 331, 333 S.E.2d 490 (1985):

> While there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent.

*Coman,* 325 N.C. at 175, 381 S.E.2d at 447.

Strickland does not dispute that, outside of applying any exceptions, she was a terminable-at-will employee. With regard to the wrongful discharge claim, Strickland claims that she fits within the public policy exception, arguing that discharging her in retaliation for her filing a complaint with the Department of Labor contravenes federal public policy.

In *Sides,* the plaintiff was an employee of Duke University Hospital. Having been asked to testify on behalf of a former patient in a trial against the hospital, Ms. Sides was instructed by her employer not to testify truthfully. Notwithstanding that instruction, she did testify truthfully and as a result was discharged. The North Carolina Court of Appeals refused to dismiss her wrongful discharge claim, holding that a terminable-at-will employee cannot be discharged for refusing to violate the law and public policy. 74 N.C.App. at 342, 328 S.E.2d at 826.

In *Coman,* the plaintiff employee, a truck driver, alleged that his employer required him to violate United States Depart-

ment of Transportation regulations by driving for periods of time in excess of that allowed by the regulations and then to falsify federally required driving logs so it would appear the employer was in compliance with regulations. When the plaintiff refused, his pay was substantially refused, such reduction being the precursor to his discharge. The North Carolina Supreme Court held that the plaintiff could not be fired for refusing to comply with the employer's request since he had been asked to violate the law. 325 N.C. at 175, 381 S.E.2d at 447.

The Fourth Circuit Court of Appeals also has had occasion to address the North Carolina public policy exception. *Harrison v. Edison Bros. Apparel Stores, Inc.,* 924 F.2d 530 (4th Cir.1991), *reh. en banc den.* (4th Cir.1991). In *Harrison,* the plaintiff employee was requested to engage in sex with her manager. When she refused his sexual advances, she was discharged. The Fourth Circuit, applying the reasoning of *Coman,* held that the plaintiff's wrongful discharge action should be allowed to proceed because the plaintiff was discharged as a result of her denial to engage in acts of prostitution, a violation of state law. *Id.* at 534. Although the Court noted that the breadth of *Coman* is still to be determined, it stated that "the only three successful wrongful discharge plaintiffs we find in reported North Carolina cases have had to choose between their jobs and violating the criminal law. *Id.* at 533.[3]

Strickland, in this case, has not alleged that MICA instructed her to violate a criminal law or in any way conditioned her continued employment on such a violation. This case is fundamentally different from *Coman, Sides, Williams,* and *Harrison.* Because the present law of wrongful discharge limits the public policy exception to instances when an employee's continued employment is conditioned upon the violation of a criminal law or regulation, summary judgment will be granted on this claim.

---

**3.** The third wrongful discharge case which applied the public policy exception was *Williams v. Hillhaven Corp.,* 91 N.C.App. 35, 370 S.E.2d 423 (1988). In *Williams,* the Court of Appeals

found that an employee stated a cause of action when the employee contended that she was discharged for appearing and testifying truthfully in response to a subpoena.

## B.

### BREACH OF CONTRACT

In her breach of contract claim, Strickland argues that she falls within an exception to the terminable-at-will rule because she was required to move her residence from Greensboro to Winston–Salem upon accepting employment. She does not forecast evidence, however, that she and MICA had agreed upon either her employment lasting for a discreet period of time or until the occurrence of specific conditions such as poor performance.

While North Carolina courts have recognized that offers such as employment for "life", for "permanent" employment, or for "at least ten years", or for "as long as the employee satisfactorily performs" his or her duties generally create only a terminable-at-will arrangement, it has also been recognized that those conditions may become enforceable when the employee has provided consideration in addition to performing services associated with the employment. *See Tuttle v. Kernersville Lumber Co.*, 263 N.C. 216, 218, 139 S.E.2d 249, 251 (1964). For example, an employee gives additional consideration when she has moved her residence from one place to another in order to accept employment. In *Sides*, supra, the North Carolina Court of Appeals found consideration in Ms. Sides' move to North Carolina from another state to accept a position at Duke Hospital and held that it was sufficient to make enforceable the assurance that she "could only be discharged for incompetence". 74 N.C.App. at 345, 328 S.E.2d at 828. In *Jones v. Carolina Power & Light Co.*, 206 N.C. 862, 175 S.E. 167 (1934) consideration was found in the plaintiff's giving up his job and home in South Carolina to relocate and work in Asheville. The relinquishment of his former employment and his relocation was sufficient to make enforceable the promise of "permanent employment for the term of at least ten years"—words which,

otherwise, would have created a relationship terminable-at-will. *Id.*

In the present case, however, there has been no showing of any promise regarding the duration of Ms. Strickland's employment or conditions of termination. In short, there has been no showing of a promise to be enforced.

This Court does not read the North Carolina law to imply as a condition of every employment agreement that whenever a person changes residences to accept or maintain employment she may thereafter be terminated only if her performance becomes unsatisfactory. Plaintiff argues that language in *Tuttle* which has been quoted in both *Burkhimer v. Gealy*, 39 N.C.App. 450, 454, 250 S.E.2d 678, 682, *cert. den.*, 297 N.C. 298, 254 S.E.2d 918 (1979) and *Sides*, 74 N.C.App. at 345, 328 S.E.2d at 828, stands for that proposition but cites to no opinion in which a North Carolina court has actually resolved a case on that basis when there had not been an actual promise or assurance of employment (for a period of time[4] or until the occurrence of certain conditions[5]) inducing the action or relinquishment defined as "consideration".

MICA's motion for summary judgment will, therefore, be granted with regard to the breach of contract claim.

### CONCLUSION

For the reasons stated above, the Court will deny MICA's motion for summary judgment on the issues of the federal retaliation claim and the state deduction claim. The Court will grant MICA's motion on the federal overtime provision claim, the state wrongful discharge claim and the state breach of contract claim.

---

**4.** *Fisher v. Lumber Co.*, 183 N.C. 485, 111 S.E. 857 (1922) (for "life"); *Dotson v. Guano Co.*, 207 N.C. 635, 178 S.E. 100 (1935) (for "life"); *Jones v. Carolina Power & Light Co.*, 206 N.C.862, 175 S.E. 167 ("... at least ten years").

**5.** *Sides*, 74 N.C.App. at 345, 328 S.E.2d at 828. (discharge could only be for "incompetence")