IN THE MATTER OF: THE APPEAL OF PHILIP MORRIS U.S.A. FROM THE DECISION OF THE CABARRUS COUNTY BOARD OF EQUALIZA-TION AND REVIEW FOR PERSONAL PROPERTY TAXES YEARS 1984-1989

No. 49PA93

(Filed 3 December 1993)

**Taxation § 25.3 (NCI3d)— ad valorem taxes—business property audit agreement—contingent fee—no public policy violation**

A county's business personal property audit agreement with a private auditor which compensated the auditor at the rate of thirty-five percent of taxes owed on discovered property did not violate public policy, and the resulting discovery of taxable property was not void, since the legislature in N.C.G.S. § 105-299 authorized counties to employ private auditors, and the legislature's failure to prohibit contingent fees for a private tax auditor's services constitutes a determination that such contingent fee contracts are not contrary to public policy.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 493 et seq.; State and Local Taxation § 728.**

On discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 108 N.C. App. 514, 424 S.E.2d 222 (1993), affirming a final decision of the North Carolina Property Tax Commission. Heard in the Supreme Court on 13 September 1993.

*Parker, Poe, Adams & Bernstein, by Charles C. Meeker; and Blakeney & Alexander, by David L. Terry, for the appellant Cabarrus County.*

*Hunton & Williams, by William S. Patterson, Jean Gordon Carter, James W. Shea, and David A. Agosto, for the appellee Philip Morris U.S.A.*

*Robinson Maready Lawing & Comerford, by Michael L. Robinson, on behalf of Durham County, amicus curiae.*

*James B. Blackburn III, General Counsel, N.C. Association of County Commissioners, and S. Ellis Hankins, General Counsel, N.C. League of Municipalities, amici curiae.*

*Floyd Allen & Jacobs, by Jack W. Floyd and Robert V. Shaver, Jr., on behalf of Guilford Mills, Inc., amicus curiae.*

*Poyner & Spruill, by J. Phil Carlton, on behalf of Investment North Carolina, Inc., amicus curiae.*

*S. Davis Phillips, Secretary of Commerce, on behalf of The North Carolina Economic Development Board, amicus curiae.*

*Johnson Gamble Mercer Hearn & Vinegar, by Charles H. Mercer, Jr., and M. Blen Gee, Jr.; and Maupin Taylor Ellis & Adams, P.A., by Charles B. Neely, Jr., Nancy S. Rendleman, and Linda F. Nelson, on behalf of North Carolina Citizens for Business and Industry, amicus curiae.*

MITCHELL, Justice.

The controlling facts in this case are undisputed. In May of 1988, the Cabarrus County Tax Assessor entered into a contract, denominated "Business Personal Property Audit Agreement," with Tax Management Associates, Inc. ("TMA"). The Cabarrus County Board of Commissioners approved the contract on 16 January 1989. Under the terms of the contract, TMA agreed to provide Cabarrus County with audit services "on a reasonable sample of the County's business personal property taxpayers" in accordance with applicable North Carolina General Statutes, specifically N.C.G.S. §§ 105-283, 105-317.1 and 105-312. The fee arrangement provided for in the contract required Cabarrus County to pay TMA thirty-five percent of taxes owed on property TMA discovered, including any penalties. To "discover" property in this context means to identify taxable property that was not listed for taxation or property that was listed but was substantially undervalued in its listing by the taxpayer. *See* N.C.G.S. § 105-272(6b) (1992).

In November of 1988, TMA contacted Philip Morris U.S.A. to initiate an audit of the tax returns of Philip Morris for the years 1986 and 1987. The audit was later expanded to include Philip Morris' tax returns for all years from 1983 through 1989 and resulted in the "discovery" of a substantial amount of taxable property. Based on the audit and acting pursuant to N.C.G.S. § 105-312, the Cabarrus County Tax Assessor issued a final decision concluding that understatements of tangible personal property on the tax returns of Philip Morris exceeded $100 million per year for each of the years 1984 through 1989 and cumulatively totaled

$923,339,510. Philip Morris filed a formal request for a review of the Tax Assessor's final decision by the Cabarrus County Board of Equalization and Review. A hearing was held, and in a decision dated 7 November 1990, the Board ordered an assessment of discovered personal property in the amount of $599,426,934.

Philip Morris then appealed to the North Carolina Property Tax Commission ("Commission"). Philip Morris included among its grounds for appeal a contention that the contingent fee contract for private auditing services between Cabarrus County and TMA was against public policy and rendered the discovery of Philip Morris' property void. The Commission, sitting as the State Board of Equalization and Review, heard arguments of counsel and received exhibits on the parties' motions. On 24 May 1991, the Commission rendered its final decision concluding by a 3-2 vote that the contingent fee contract "was void as against public policy from its inception." Therefore, the Commission held that Cabarrus County's discovery and assessment of Philip Morris' property was void "because it resulted directly from the County's entry into a contingent fee contract that was void as against public policy."

Cabarrus County gave notice of appeal to the Court of Appeals. Philip Morris then filed a cross-notice of appeal. The Court of Appeals affirmed the decision of the Commission. On 11 March 1993, this Court allowed Cabarrus County's petition for discretionary review.

Cabarrus County contends that the Court of Appeals erred in concluding that the contingent fee contract for a private tax auditor's service in the present case violates public policy. We agree and, therefore, reverse the decision of the Court of Appeals.

Only a few courts in other jurisdictions have considered the validity of contingent fee contracts for tax audits. The results reached by those courts are completely mixed and establish no clear line of authority. *E.g., Jackson Lumber Co. v. McCrimmon*, 164 F. 759 (N.D. Fla. 1908) (contingent fee arrangement not against public policy); *Sears, Roebuck and Co. v. Parsons*, 260 Ga. 824, 410 S.E.2d 4 (1991) (contingent fee contract violates public policy); *Simpson v. Silver Bow County*, 87 Mont. 83, 285 P. 195 (1930) (contingent fee contract not against public policy); *Murphy v. Swanson*, 50 N.D. 788, 198 N.W. 116 (1924) (contingent fee contract violates public policy). We do not find such authorities from other jurisdic-

tions persuasive or particularly helpful in resolving the issue before us in this case.

The general rule in North Carolina is that absent "constitutional restraint, questions as to public policy are for legislative determination." *State v. Whittle Communications*, 328 N.C. 456, 470, 402 S.E.2d 556, 564, *reh'g denied*, 328 N.C. 735, 404 S.E.2d 878 (1991) (quoting *Gardner v. North Carolina State Bar*, 316 N.C. 285, 293, 341 S.E.2d 517, 522 (1986) ). Therefore, we must consider whether the legislature has determined the public policy with regard to the issue before us.

North Carolina General Statute § 105-299 authorizes boards of county commissioners to employ firms to assist county tax assessors. It expressly provides that the "board of county commissioners may employ appraisal firms, mapping firms or other persons or firms having expertise in one or more duties of the assessor to assist him or her in the performance of such duties." N.C.G.S. § 105-299 (1992). The General Assembly has, therefore, specifically authorized each county to employ private auditors, and we conclude that a power incidental to that grant of authority is the power to decide the basis upon which the private auditors are to be employed. Thus, the statute is the expression of the legislature regarding the public policy on this matter.

Our legislature has specifically prohibited contingent fees in certain settings when it has deemed them to be contrary to the interests of the public. For example, North Carolina law prohibits real estate appraisers giving valuations based on contingent fee arrangements, N.C.G.S. § 93A-80(a)(3), and N.C.G.S. § 120-47.5 outlaws contingent fees for lobbying. Therefore, we conclude that had the General Assembly intended that private tax auditors employed to assist county tax assessors be restricted to an hourly wage or to fixed fee remuneration, it would have expressly said so. Additionally, North Carolina courts have long upheld contingent fee contracts when they are entered into, *inter alia*, in good faith and without undue influence. *See, e.g., High Point Casket Co. v. Wheeler*, 182 N.C. 459, 109 S.E. 378 (1921) (fee of one-third of recovery held not unreasonable); *In re Foreclosure of Cooper*, 81 N.C. App. 27, 344 S.E.2d 27 (1986) (contingent fee contract approved in equitable distribution proceeding).

It is clear that our legislature is well aware of the existence of contingent fee contracts and knows how to forbid them when

it wishes to do so, but it has chosen not to place any restriction on such contracts in N.C.G.S. § 105-29. Therefore, we conclude that our legislature has determined that contingent fee contracts for private tax auditor's services are not contrary to public policy. *Cf. Mazza v. Medical Mut. Ins. Co.*, 311 N.C. 621, 627, 319 S.E.2d 217, 221 (1984) (absence of legislative prohibition held to support the validity of insurance contracts covering punitive damages). We express no opinion on the wisdom of any public policy established by the legislature, of course, as the determination of whether a particular policy is wise or unwise is for determination by the General Assembly. *Martin v. Housing Corp.*, 277 N.C. 29, 41, 175 S.E.2d 665, 671 (1970).

For the foregoing reasons, we conclude that the Court of Appeals erred in holding that the contingent fee contract in question here was void as against public policy and in holding that the resulting discovery of taxable property of Philip Morris was null and void. The decision of the Court of Appeals is reversed and this case is remanded to that court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.