BARBARA A. JARMAN, PLAINTIFF v. JIM DEASON, D/B/A DEASON LANDSCAPE
& IRRIGATION, DEFENDANT

No. COA04-1005

(Filed 20 September 2005)

**Employer and Employee— wrongful discharge—age discrimination—no public policy violation**

The trial court did not err by dismissing under N.C.G.S. § 1A-1, Rule 12(b)(6) plaintiff's claim for wrongful discharge on the basis of age discrimination, because: (1) where, as here, the General Assembly has set forth the public policy of this State and limited the application of the policy to employers of fifteen or more people, it is not the province of the Court of Appeals to superimpose its own determination of what North Carolina's public policy should be; and (2) defendant's actions are not prohibited by the public policy as established by our General Assembly when defendant does not employ fifteen or more full-time employees. N.C.G.S. § 143-422.2.

Judge GEER concurring.

Appeal by plaintiff from judgment entered 24 May 2004 by Judge Yvonne Mims Evans in Gaston County Superior Court. Heard in the Court of Appeals 10 March 2005.

*Jim Funderburk, for plaintiff-appellant.*

*Van Hoy, Reutlinger, Adams & Dunn, by G. Bryan Adams, III, and Stephen J. Dunn, for defendant-appellee.*

CALABRIA, Judge.

Barbara A. Jarman ("plaintiff") appeals from a trial court judgment dismissing her claim for wrongful discharge on the basis of age discrimination against Jim Deason, d/b/a Deason Landscape & Irrigation ("defendant"). We affirm.

Plaintiff's 9 June 2003 complaint, as later amended, alleged the following facts. On or about 24 March 2003, defendant "advised [plaintiff] that even though she was doing a good job, she was 'getting some age on her' and [discharged] her." At the time of her discharge, plaintiff was fifty-two years old and had been employed by defendant for approximately eight years and seven months as an employee-at-

will working in the area of lawn maintenance, landscaping, and irrigation. Plaintiff worked with defendant longer than any other employee, was considered a good employee, received wage increases during her employment from $5.00 per hour to $9.50 per hour, was physically capable of continuing her employment, and intended to continue working with defendant past her retirement age of sixty-five. Defendant did not contest plaintiff's application for unemployment benefits, which stated she was discharged due to her age. As the basis for her claim plaintiff alleged, "[A]lthough Defendant does not employ 15 full-time employees, it is, on information and belief, against the public policy of the State of North Carolina to allow discrimination on the basis of age." On 24 May 2004, the trial court granted defendant's motion to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2003). Plaintiff appeals.

"On a Rule 12(b)(6) motion to dismiss, the question is whether, as a matter of law, the allegations of the complaint, treated as true, state a claim upon which relief can be granted." *Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002). On appeal, plaintiff asserts the trial court erred by dismissing her complaint under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) on the grounds that the legislature, via N.C. Gen. Stat. § 143-422.2 (2003), has declared it against the public policy of this State to discriminate based on age. Defendant rejoins that dismissal was proper under N.C. Gen. Stat. § 143-422.2, which provides as follows:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

> It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment foments domestic strife and unrest, deprives the State of the fullest utilization of its capacities for advancement and development, and substantially and adversely affects the interests of employees, employers, and the public in general.[1]

---

1. We note both Title VII and the Age and Employment Discrimination Act contain the similar numerical thresholds of employees below which they do not apply. Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin" by an employer "who has fifteen or more employees for each working day in each of twenty or more calendar weeks." 42 U.S.C. § 2000e (2005). Under the Age and Employ-

JARMAN v. DEASON

[173 N.C. App. 297 (2005)]

For reasons that follow, we are of the opinion that defendant's interpretation regarding the legislature's expression of public policy in N.C. Gen. Stat. § 143-422.2 is correct and affirm. "The general rule in North Carolina is that absent 'constitutional restraint, questions as to public policy are for legislative determination.' " *In re Phillip Morris*, 335 N.C. 227, 230, 436 S.E.2d 828, 830 (1993) (quoting *State v. Whittle Communications*, 328 N.C. 456, 470, 402 S.E.2d 556, 564 (1991). In the instant case, the legislature has clearly and distinctly set forth this State's public policy with respect to employment discrimination. Our legislature has specifically prohibited employment discrimination on certain enumerated bases by employers of fifteen or more people and deemed such discrimination to be contrary to the interests of the public. Our Supreme Court has noted that, where the legislature is clearly aware of a practice challenged on public policy grounds and knows how to forbid it but chooses not to, the proper course of action is to recognize and honor the legislative determination. *Id.* Thus, where, as here, the General Assembly has set forth the public policy of this State and limited the application of the policy to employers of fifteen or more people, it is not the province of this Court to superimpose our own determination of what North Carolina's public policy should be over that deemed appropriate by our General Assembly. This holding is not an endorsement of such practices; rather, it is a recognition of the respective functions of the judiciary and legislature. Defendant's actions, regardless of how repugnant we may find those actions, are not prohibited by the public policy as established by our General Assembly, and relief must come from the appropriate governmental body.

Plaintiff nevertheless asserts that "th[is] Court is not limited by the legislature. The Court is free to determine, on its own, whether an act on the part of an employer in an at-will employment situation violates the public policy of this state." Plaintiff cites various cases concerning discrimination on bases other than those specifically enumerated in N.C. Gen. Stat. § 143-422.2. *See, e.g., Simmons v. Chemol Corp.*, 137 N.C. App. 319, 528 S.E.2d 368 (2000) (concerning employment discrimination on the basis of physical impairment); *Lenzer v. Flaherty*, 106 N.C. App. 496, 418 S.E.2d 276 (1992) (concerning termi-

---

ment Discrimination Act, an employer, "who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[,]" 29 U.S.C. § 630 (2005), is prohibited from "fail[ing] or refus[ing] to hire or discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a) (2005).

nation of employment due to an employee's exercise of his right to free speech); *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989) (concerning termination of employment due to employee's refusal to violate state and federal transportation regulations). However, those cases cannot avail plaintiff precisely because they involve bases not encompassed by the language of the statute. There is a marked difference between recognizing additional bases not enumerated in the statute and changing the criteria of the bases that are specifically enumerated. In the first instance, the General Assembly has declared the contours and existence of this State's public policy, and the Court is not faced with the task of overriding that which has been set forth. In the second instance, the Court is forced to countermand the determination of the General Assembly in favor of our own. We do not believe that to be the proper function of this Court.

Affirmed.

Judge TIMMONS-GOODSON concurs.

Judge GEER concurs in a separate opinion.

GEER, Judge, concurring.

Although I concur with the majority's conclusion that the trial court properly granted defendant's motion to dismiss, I analyze the issue somewhat differently. In *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989) (quoting *Sides v. Duke Univ.*, 74 N.C. App. 331, 342, 328 S.E.2d 818, 826, *disc. review denied*, 314 N.C. 331, 333 S.E.2d 490 (1985)), our Supreme Court first recognized a public policy exception to the employment at will doctrine: " '[W]hile there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent.' "

Although *Coman* establishes the availability of a tort action for wrongful discharge in violation of public policy, the Court did not define what constituted "public policy" for purposes of such a claim. *Id.* That issue was addressed by the Supreme Court in *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992), in which the Court held:

Although the definition of "public policy" approved by this Court does not include a laundry list of what is or is not "injurious to the public or against the public good," at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes.

Since *Amos*, our courts, in identifying "public policy," have looked not only to statutes, but also to the constitution and state regulations. *See, e.g., Deerman v. Beverly Cal. Corp.*, 135 N.C. App. 1, 12, 518 S.E.2d 804, 810 (1999) (Board of Nursing regulations); *Lenzer v. Flaherty*, 106 N.C. App. 496, 515, 418 S.E.2d 276, 287 (the state constitution), *disc. review denied*, 332 N.C. 345, 421 S.E.2d 348 (1992).

Plaintiff, in arguing that her termination based on age discrimination violated public policy, points only to North Carolina's Equal Employment Practices Act ("EEPA"):

It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C. Gen. Stat. § 143-422.2 (2003). This Court has repeatedly recognized that the EEPA may form the basis for a wrongful discharge claim. *See, e.g., Simmons v. Chemol Corp.*, 137 N.C. App. 319, 322, 528 S.E.2d 368, 370 (2000) (wrongful discharge claim for handicap discrimination based upon N.C. Gen. Stat. § 143-422.2); *McCullough v. Branch Banking & Trust Co.*, 136 N.C. App. 340, 346, 524 S.E.2d 569, 574 (2000) (holding that the plaintiff had asserted a claim by alleging that his termination was "in violation of this State's public policy prohibiting discrimination on account of a person's handicap or disability," citing N.C. Gen. Stat. § 143-422.2); *Brewer v. Cabarrus Plastics, Inc.*, 130 N.C. App. 681, 504 S.E.2d 580 (1998) (remanding race discrimination and retaliation claims based on N.C. Gen. Stat. § 143-422.2 for trial), *disc. review denied*, 350 N.C. 91, 527 S.E.2d 662 (1999). As the majority opinion explains, since the complaint does not allege that defendant employed 15 or more employees, the question before this Court is whether the numerical limitation in N.C. Gen. Stat. § 143-422.2 also limits the scope of North Carolina's public policy against age discrimination.

Several other states have addressed this same question, reaching varying results. In *Jennings v. Marralle*, 8 Cal. 4th 121, 124-25, 32 Cal.

Rptr. 2d 275, 277, 876 P.2d 1074, 1076 (1994), the California Supreme Court held that an employee, alleging age discrimination, could not maintain a claim for wrongful discharge in violation of public policy when the state fair employment act applied only to employers who employed five or more persons, a criteria that the defendant did not meet. The Court stated:

> This exemption of small employers from the [Act's] ban on age discrimination was enacted simultaneously to, and is inseparable from, the legislative statement of policy. For that reason, and because no other statute or constitutional provision bars age discrimination, we conclude that there presently exists no "fundamental policy" which precludes age discrimination by a small employer.

*Id.* at 125, 32 Cal. Rptr. 2d at 277, 876 P.2d at 1076 (construing Cal. Code §§ 12920, 12926(d) (West 2005)).

The Supreme Courts in Connecticut, Nevada, Oklahoma, and Utah have all reached the same conclusion with respect to discrimination claims. *See Thibodeau v. Design Group One Architects, LLC,* 260 Conn. 691, 709, 802 A.2d 731, 742 (2002) ("[T]he act also embodies a second public policy, namely that employers with fewer than three employees shall not be required to defend against employment discrimination claims. Contrary to the urging of the plaintiff, we cannot give voice to the act's prohibitions and simultaneously ignore its exemption for small employers, for the latter operates as a limitation on the former." (construing Conn. Gen. Stat. §§ 460-51(10), -60 (2004))); *Chavez v. Sievers,* 118 Nev. 288, 294, 43 P.3d 1022, 1026 (2002) ("Since the legislature determined that small businesses should not be subject to racial discrimination suits, we decline to create an exception to the at-will doctrine for alleged racial discrimination at these businesses." (construing Nev. Rev. Stat. §§ 613.310(2), .330 (2003))); *Brown v. Ford,* 905 P.2d 223, 229 (Okla. 1995) ("[Plaintiff's] common-law claim would not be actionable as a discharge in breach of public policy because her employer, who engaged *fewer than fifteen employees,* is outside the Act's purview." (construing Okla. Stat. tit. 25, §§ 1301(1), 1302 (1987))); *Burton v. Exam Ctr. Indus. & Gen. Med. Clinic, Inc.,* 2000 UT 18, —— 13-14, 994 P.2d 1261, 1266 (2000) (holding that the plaintiff could not assert an age discrimination claim against a small employer when the fair employment statute applied only to employers of 15 or more employees and the plaintiff pointed to no other applicable constitu-

tional or statutory declaration of public policy (construing Utah Code Ann. §§ 34A-5-102(8), -106 (2001))).

In contrast, the highest courts in Ohio and West Virginia have both allowed wrongful discharge in violation of public policy claims based on discrimination by employers not employing the statutorily-required number of employees. *See Collins v. Rizkana*, 73 Ohio St. 3d 65, 652 N.E.2d 653 (1995); *Williamson v. Greene*, 200 W. Va. 421, 490 S.E.2d 23 (1997). In *Collins*, the statute at issue prohibited "any employer" from discriminating based on race, color, religion, sex, national origin, handicap, age, or ancestry. *Collins*, 73 Ohio St. 3d at 74, 652 N.E.2d at 660-61 (construing Ohio Rev. Code Ann. § 4112.02 (LexisNexis 2001)). It also provided a statutory remedy with respect to employers of four or more persons. *Id.* (construing Ohio Rev. Code Ann. § 4112.01(A)(2) (LexisNexis 2001)). In holding that the small employer limitation did not preclude the wrongful discharge claim, the Court explained:

> Since [the statute] does not preempt common-law claims, we cannot interpret [the requirement of four employees] as an intent by the General Assembly to grant small businesses in Ohio a license to sexually harass/discriminate against their employees with impunity. Instead, we can only read [that requirement] as evidencing an intention to exempt small businesses from the burdens of [the statute], not from its antidiscrimination policy. . . .
>
> We do not mean to suggest that where a statute's coverage provisions form an essential part of its public policy, we may extract a policy from the statute and use it to nullify the statute's own coverage provisions. However, in the absence of legislative intent to preempt common-law remedies, we can perceive no basis upon which to find that [the four-employee requirement] forms part of the public policy reflected in [the anti-discrimination provision]. Therefore, we cannot find it to be Ohio's public policy that an employer with three employees may condition their employment upon the performance of sexual favors while an employer with four employees may not.

*Id.* (internal citations omitted).

Likewise, the West Virginia Human Rights Act expresses a public policy of providing " 'all of its citizens equal opportunity for employment' " and prohibited discrimination by " 'any employer.' " *Williamson*, 200 W. Va. at 429, 490 S.E.2d at 31 (emphasis omitted) (quoting W. Va. Code §§ 5-11-2, 5-11-9(1) (2002)). The *Williamson*

court first determined that the remedial portions of the West Virginia Human Rights Act applied only to employers of 12 or more employees because it defined "employer" as including only employers of 12 or more employees. *Id.* at 428, 490 S.E.2d at 30 (construing W. Va. Code § 5-11-3(d) (2002)). Nevertheless, the court held that "[a]lthough the Act does not provide this plaintiff with a statutory remedy, it nevertheless sets forth a clear statement of public policy sufficient to support a common law claim for retaliatory discharge against an employer . . . exempted by [the statutory definition of employer]." *Id.* at 431, 490 S.E.2d at 33. *See also Molesworth v. Brandon,* 341 Md. 621, 632, 672 A.2d 608, 613 (1996) ("The public policy in § 14, however, by its own language, proscribes discrimination in employment by 'any employer.' . . . If the term 'employer' in § 14 were meant to refer only to employers as defined in § 15(b), the term 'any' would be unnecessary." (quoting Md. Ann. Code art. 49B, § 14 (2003)); *Roberts v. Dudley,* 140 Wash. 2d 58, 70, 993 P.2d 901, 908 (2000) (en banc) ("[T]he statutory remedy is not in itself an expression of the public policy, and the definition of 'employer' for the purpose of applying the statutory remedy does not alter or otherwise undo to any degree this state's public policy against employment discrimination." (construing Wash. Rev. Code § 49.60.040(3) (West 2002)).

Unlike the statutes in Ohio, West Virginia, Washington, and Maryland, however, the North Carolina EEPA does not contain an expression of policy regarding discrimination separate from the small employer exemption. The 15-employee requirement is incorporated within the anti-discrimination policy. Further, the EEPA contains no statutory remedy to which the 15-employee requirement could apply apart from the anti-discrimination policy. The EEPA simply declares the public policy of the State and authorizes the North Carolina Human Relations Commission to receive, investigate, and conciliate charges of discrimination forbidden by federal law forwarded by the Equal Employment Opportunity Commission. N.C. Gen. Stat. §§ 143-422.2, -422.3 (2003). I cannot, therefore, discern an intent by the General Assembly to express in the EEPA a public policy regarding discrimination divorced from the 15-employee requirement.

Nevertheless, as the California Supreme Court recognized in *Jennings* and the Utah Supreme Court recognized in *Burton,* an exemption for small employers in one statute addressing discrimination would not preclude a wrongful discharge claim if another statute or constitutional provision expressed a policy against discrimination without such a limitation. *See Jennings,* 8 Cal. 4th at 135,

32 Cal. Rptr. 2d at 284, 876 P.2d at 1083 ("The Legislature's decision to exclude small employers from the [fair employment act] *and the omission of any other legislation barring discrimination on the basis of age* precludes finding a fundamental policy that extends to age discrimination by small employers." (emphasis added)); *Burton*, 2000 UT 18 at § 14, 994 P.2d at 1266 ("There is no such constitutional or statutory declaration of public policy in Utah against discrimination on account of age in the termination of employment of employees of small employers.").

Maryland's highest court has held that an employee may pursue a wrongful discharge claim based on sex discrimination despite an exclusion in its Fair Employment Practices Act for small employers because "Maryland's public policy against sex discrimination is ubiquitous." *Molesworth*, 341 Md. at 632, 672 A.2d at 613. The Court observed that Maryland's Fair Employment Practices Act was "one of at least thirty-four statutes, one executive order, and one constitutional amendment in Maryland that prohibits discrimination based on sex in certain circumstances. Together these provisions provide strong evidence of a legislative intent to end discrimination based on sex in Maryland." *Id.*, 672 A.2d at 613-14.

The Washington Supreme Court has allowed a wrongful discharge claim based on age discrimination when a statute, other than the one including an exemption for small employers, also prohibited age discrimination in employment. *Bennett v. Hardy*, 113 Wash. 2d 912, 926, 784 P.2d 1258, 1264 (1990). *See also Badih v. Myers*, 36 Cal. App. 4th 1289, 1293, 43 Cal. Rptr. 2d 229, 231 (1995) (distinguishing *Jennings* with respect to a wrongful discharge claim based on sex discrimination because "sex discrimination . . . is prohibited not only by the [Fair Employment and Housing Act] but also by article I, section 8 of the California Constitution"), *disc. review denied*, No. 5048587, 1995 Cal. LEXIS 6410 (Cal. Oct. 19, 1995).

My review of North Carolina's General Statutes and constitution does not reveal another basis for upholding a wrongful discharge claim based on age discrimination apart from the EEPA. The General Assembly has expressed the State's public policy against employment discrimination in another statute not including a limitation based on the number of employees, but has chosen not to include age discrimination as one of the prohibited grounds for discrimination:

No employer, employee, or any other person related to the administration of [the Occupational Safety and Health] Article

shall be discriminated against in any work, procedure, *or employ-
ment* by reason of sex, race, ethnic origin, or by reason of reli-
gious affiliation.

N.C. Gen. Stat. § 95-151 (2003) (emphasis added). The applicable def-
inition of employee includes "an employee of an employer who is
employed in a business or other capacity of his employer, includ-
ing any and all business units and agencies owned and/or controlled
by the employer." N.C. Gen. Stat. § 95-127(9) (2003). The definition
of employer includes "a person engaged in a business who has
employees, including any state or political subdivision of a state, but
does not include the employment of domestic workers employed
in the place of residence of his or her employer." N.C. Gen. Stat.
§ 95-127(10).

In short, N.C. Gen. Stat. § 95-151 establishes a comprehensive
policy precluding employment discrimination "by reason of sex, race,
ethnic origin, or by reason of religious affiliation." While this statute
would support a wrongful discharge claim based on one of the speci-
fied grounds, the omission of age from the list further limits our abil-
ity to recognize a common law wrongful discharge claim based on
age discrimination by small employers.

I also have reviewed the General Statutes to determine whether,
as in *Molesworth*, I can discern a substantial legislative policy against
age discrimination. Repeatedly, our General Assembly has passed leg-
islation prohibiting discrimination in a variety of contexts, but it
rarely has included age. *See, e.g.*, N.C. Gen. Stat. § 18B-1006(k) (2003)
(prohibiting issuance of alcoholic beverage permit to any private club
that practices discrimination on the basis of race, gender, or ethnic-
ity); N.C. Gen. Stat. § 18B-1215 (2003) (prohibiting discrimination in
wine distribution agreements based on race, color, creed, sex, reli-
gion, or national origin); N.C. Gen. Stat. § 41A-4 (2003) (defining as an
unlawful housing practice discrimination based on race, color, reli-
gion, sex, national origin, handicapping condition, or familial status);
N.C. Gen. Stat. § 53-180(d) (2003) (prohibiting discrimination with
respect to the extension of credit on the basis of race, color, religion,
national origin, sex, or marital status); N.C. Gen. Stat. § 65-72(a)
(2003) (stating the policy of the State as prohibiting cemeteries from
discriminating based on race or color); N.C. Gen. Stat. § 75B-2 (2003)
(prohibiting any person doing business in the State of North Carolina
from entering into any agreement with any foreign government or
person that requires discriminating based upon race, color, creed,
religion, sex, national origin, or foreign trade relationships); N.C.

Gen. Stat. § 90-285.1(17) (2003) (providing for revocation of nursing home administrator license for discrimination among patients, employees, or staff based on race, sex, religion, color, or national origin); N.C. Gen. Stat. § 131A-8 (2003) (prohibiting health care facilities from discriminating based on race, creed, color, or national origin); N.C. Gen. Stat. § 143B-391(5) (2003) (creating Human Rights Commission in part "[t]o encourage the employment of qualified people without regard to race"); N.C. Gen. Stat. § 160A-353(6) (2003) (providing that a city may not accept a devise, bequest, or gift that requires it to discriminate among its citizens based on race, sex, or religion). Thus, our General Assembly has prohibited discrimination based on factors such as race, sex, color, national origin, and creed in a wide spectrum of activities touching almost every aspect of daily life—suggesting a pervasive or "ubiquitous" policy similar to what the Maryland Court of Appeals described in *Molesworth*.

By contrast, those statutes including age as an unlawful form of discrimination have instead focused either on limiting the discriminatory actions of governmental bodies or on specifying that the State will not do business with entities who discriminate based on age. *See, e.g.*, N.C. Gen. Stat. § 115D-77 (2003) (stating that the policy of the community college system is not to discriminate in employment based on race, religion, color, creed, national origin, sex, *age*, or disability except where age, sex, or physical or mental impairment is a bona fide occupational qualification); N.C. Gen. Stat. § 126-16 (2003) (requiring all State departments and agencies and local political subdivisions to give equal opportunity for employment and compensation without regard to race, religion, color, creed, national origin, sex, *age*, or handicapping condition except where age, sex, or physical requirements "constitute bona fide occupational qualifications necessary to proper and efficient administration"); N.C. Gen. Stat. § 136-28.4(b) (2003) (Department of Transportation shall give equal opportunity for contracts without regard to race, religion, color, creed, national origin, sex, *age*, or handicapping condition); N.C. Gen. Stat. § 143-128.2(h) (2003) (governmental bodies shall award public building contracts without regard to race, religion, color, creed, national origin, sex, *age*, or handicapping condition); N.C. Gen. Stat. § 143-135.5(b) (2003) (stating that State will not engage in business with a company found, within the last two years, by a court or administrative body to have discriminated unlawfully based on race, gender, religion, national origin, *age*, physical disability, or any other unlawful basis in its solicitation, selection, hiring, or treatment of another business); N.C. Gen. Stat. § 166A-12 (2003) (stat-

ing that state and local governmental bodies and other personnel who carry out emergency management functions shall not discriminate on grounds of race, color, religion, nationality, sex, *age*, or economic status in distribution of supplies, processing of applications, and other relief and assistance activities).

I do not believe that we can declare without further expression of legislative intent that the employee of a small employer may bring a claim against that private employer for wrongful discharge in violation of public policy based on age discrimination. Unlike, for example, race or sex, with age discrimination, there are policy decisions that must be made by the legislature, such as the beginning age for discrimination claims and whether there should be an ending age.

As the United States Supreme Court has pointed out, age discrimination, although without question troubling, is not comparable to other forms of discrimination such as that based on race or gender:

> Age classifications, unlike governmental conduct based on race or gender, cannot be characterized as so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy. Older persons, again, unlike those who suffer discrimination on the basis of race or gender, have not been subjected to a history of purposeful unequal treatment. Old age also does not define a discrete and insular minority because all persons, if they live out their normal life spans, will experience it. Accordingly, as we recognized in [prior decisions], age is not a suspect classification under the Equal Protection Clause.

*Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83, 145 L. Ed. 2d 522, 542, 120 S. Ct. 631, 646 (2000) (internal citations and quotation marks omitted). A State is, therefore, allowed to discriminate based on age so long as "the age classification in question is rationally related to a legitimate state interest." *Id.* In contrast, with race, any distinction must further compelling governmental interests and with gender, classifications must both serve important governmental objectives and the discriminatory means employed must be substantially related to achievement of those objectives. *Id.* at 84, 145 L. Ed. 2d at 542-43, 120 S. Ct. at 647.

Thus, while it is questionable that State public policy could or would, for example, condemn race discrimination by a large employer but permit it by a small employer, age discrimination gives rise

to different considerations. Because the only statute reflecting the General Assembly's intent to prohibit age discrimination in the private sector includes the 15-employee limitation, I agree that this Court cannot recognize a claim for wrongful discharge in violation of public policy when an employer of fewer than 15 employees commits age discrimination.