IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-605

Filed 17 December 2025

Durham County, No. 24CV009349-310

REBECCA EDWARDS, Plaintiff,

v.

STRATA SOLAR, LLC, Defendant.

Appeal by plaintiff from order entered 25 February 2025 by Judge John M. Dunlow in Durham County Superior Court. Heard in the Court of Appeals 18 November 2025.

> *Elliot Morgan Parsonage, PLLC, by R. Michael Elliot and Suzanne Reynolds, for plaintiff-appellant.*

> *Nelson Mullins Riley & Scarborough LLP, by Phillip J. Strach and Nathaniel J. Pencook, for defendant-appellee.*

ARROWOOD, Judge.

Rebecca Edwards ("plaintiff") appeals from the trial court's order granting a motion to dismiss pursuant to Rule 12(b)(6) in favor of Strata Solar, LLC ("defendant"). Plaintiff contends her complaint sufficiently asserted a prima facie case for wrongful discharge from her employment on the basis of sex discrimination. For the following reasons, we affirm in part, reverse in part, and remand.

I.  Background

Plaintiff filed a complaint in Durham County on 18 October 2024. Her

complaint alleged the following:

Plaintiff is an attorney who began employment with defendant on 28 November 2022, following a period of recruitment for a senior legal role at the company. During the recruitment process, defendant "actively and aggressively pursued" plaintiff and represented that she would be groomed for the Deputy General Counsel role, with defendant's General Counsel allegedly repeatedly communicating that the advancement would be swift: "[I]f you are in the same place in a year, we will have failed you." Plaintiff expressed her concern about being the only woman on the legal team, but she accepted the position on the basis of defendant's communications. Plaintiff worked in defendant's legal department for about three months and received positive feedback in her only performance evaluation.

Plaintiff learned that she was pregnant in December 2022, after many years of difficulty becoming a parent. Given the early stage of the pregnancy and her "anxiety" that defendant would "hold her desire to be a mother against her" in advancement considerations, she did not inform defendant at the time.

Plaintiff experienced a miscarriage in January 2023. Beginning January 20 and throughout the subsequent two weeks, plaintiff experienced a series of medical emergencies requiring professional attention and regularly communicated with defendant about her inability to be present in the office, citing medical reasons. Then, on January 29, plaintiff contacted her supervising General Counsel to fully inform him of the pregnancy's termination and her need for remote work in the coming week.

At his request, she contacted defendant's Human Resources, who informed her that management sought documentation to verify her medical visits. Plaintiff alleges upon information and belief that defendant made no similar requests of male colleagues who requested either remote work or time off for medical appointments, and that defendant's General Counsel had authority to approve her remote work accommodations personally. Plaintiff provided medical records, but alleges that the General Counsel "remained cold and skeptical" and "was noticeably resentful of her need to work remotely."

After returning to work the following week, plaintiff met with the General Counsel, who allegedly remained skeptical about the miscarriage and expressed that plaintiff had "work to do" to repair her relationship with defendant's CEO. The following week, on 16 February 2023, plaintiff and the General Counsel met once again, where he allegedly said he "had never considered [plaintiff]" for the Deputy General Counsel position. On 28 February 2023, plaintiff and General Counsel discussed her performance review, which described her as meeting expectations generally and exceeding expectations as to professionalism. However, on 3 March 2023, plaintiff met with the General Counsel and two Human Resources representatives, who terminated her employment, allegedly because she wasn't "trustworthy" or a "team player." Plaintiff alleges that this explanation was pretextual, and that defendant terminated her due to her sex, her pregnancy and the disability accompanying her miscarriage, and "the concerns she voiced on multiple

occasions regarding the disparate treatment." Plaintiff alleges financial, emotional, personal, and professional injury after the fallout of her termination.

Plaintiff initially filed suit in Wake County Superior Court on 23 April 2024 asserting a single claim for wrongful discharge in violation of public policy. Defendant moved to dismiss the complaint pursuant to Rule 12(b)(6) because pregnancy is not a protected category under the North Carolina Equal Employment Practices Act and because plaintiff failed to state a claim based on sex discrimination alone. The court dismissed her action without prejudice on 1 August 2024.

Plaintiff filed her present complaint in Durham County Superior Court on 19 October 2024, asserting claims for wrongful discharge in violation of public policy based on (1) sex and pregnancy and (2) disability. Defendant again moved to dismiss pursuant to Rule 12(b)(6) and the trial court dismissed plaintiff's action with prejudice on 25 February 2025. Plaintiff filed her notice of appeal 21 March 2025.

## II.   Discussion

We review de novo a trial court's order granting a motion to dismiss for failure to state a claim. *Bridges v. Parrish*, 366 N.C. 539, 541 (2013). The Court must determine "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Id.* "In reviewing a trial court's Rule 12(b)(6) dismissal the issue for the court is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claim." *Bill Clark Homes v. Town of Fuquay-Varina*, 281 N.C.

App. 1, 4 (2021) (citation and internal quotation marks omitted). In ruling upon a motion to dismiss for failure to state a claim, "the complaint is to be liberally construed, viewing all permissible inferences in the light most favorable to the nonmovant, and the court should not dismiss the complaint unless it appears beyond doubt the plaintiff could prove no set of facts" in support of a claim which would entitle the plaintiff to relief. *Gouch v. Rotunno*, 291 N.C. App. 7, 10 (2023) (cleaned up).

The employer-employee relationship is governed in North Carolina by the at-will employment doctrine: "[I]n the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party." *Kurtzman v. Applied Analytical Indus., Inc.*, 347 N.C. 329, 331 (1997), *reh'g denied,* 347 N.C. 586 (1998). However, we recognize a cause of action for wrongful discharge in violation of the state's public policy. *See Coman v. Thomas Mfg. Co., Inc.*, 325 N.C. 172, 175 (1989). "While there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy." *Id.* (citation omitted). "Public policy has been defined as the principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Id.* at 175 n.2.

In order to state such a claim, "an employee must plead and prove that the employee's dismissal occurred for a reason that violates public policy." *Brackett v. SGL Carbon Corp.*, 158 N.C. App. 252, 259 (2003) (citation, quotation marks, and alterations omitted). Furthermore, "[t]he public policy exception to the at-will employment doctrine is confined to the express statements contained within our General Statutes or our Constitution." *Whitings v. Wolfson Casing Corp.*, 173 N.C. App. 218, 222 (2005). Therefore, it is not sufficient to simply point to public policy that may be implicated in issues that an employee has raised in a wrongful termination action; the employee must show that defendant violated the statutorily expressed public policy in terminating plaintiff from at-will employment.

Judicially created exceptions to the at-will employment doctrine must be interpreted narrowly, and expansion of public-policy protections is a matter reserved to the General Assembly. *Kurtzman*, 347 N.C. at 333–34. When the legislature is aware of a subject and chooses not to act, courts may not create an expanded cause of action. *See Jarman v. Deason*, 173 N.C. App. 297, 300 (2005) (holding no wrongful discharge claim exists based on employer size where legislature did not include employers with fewer than 15 employees under statute).

### A.    Wrongful Discharge Based on Pregnancy

Plaintiff contends that the trial court erred in dismissing her wrongful discharge claim to the extent it was premised on alleged discrimination related to her pregnancy and subsequent miscarriage. Insofar as her complaint alleges

discrimination based on pregnancy rather than sex, we find the trial court's dismissal was not erroneous because the General Assembly has stated no such public policy.

The North Carolina Equal Employment Practices Act ("NCEEPA") declares it to be the public policy of this State to safeguard the right and opportunity to seek and hold employment without discrimination or abridgement on account of "race, religion, color, national origin, age, sex or handicap." N.C.G.S. § 143-422.2. Notably, pregnancy is not included among the protected classifications identified in the statute, and neither the Act nor any other North Carolina statute articulates a public policy expressly prohibiting adverse employment action on the basis of pregnancy.

This statute was based on Title VII of the Civil Rights Act of 1964, and North Carolina courts look to federal Title VII jurisprudence for guidance on its interpretation. *N.C. Dep't of Corr. v. Gibson*, 308 N.C. 131, 136, (1983). The Supreme Court held in *Gilbert* that when enacting Title VII, Congress did not intend its term "sex" to encompass pregnancy. *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 146 (1976). In so doing, the Court explained:

> Absent a showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other, lawmakers are constitutionally free to include or exclude pregnancy from the coverage of legislation such as this on any reasonable basis, just as with respect to any other physical condition.

*Gilbert*, 429 U.S. at 134–35. No such "inclusion" came forth from North Carolina's General Assembly, despite their awareness of discrimination due to pregnancy.

Indeed, defendant cites opportunities when the General Assembly has declined to pass legislation that would add pregnancy to the protected categories under North Carolina employment-discrimination law—further confirming that the existing statute does not encompass pregnancy-based claims. See S.B. 474, 2017-2018 Gen. Assemb., Reg. Sess. (N.C. 2017) (proposing to amend § 143-422.2 to change "race, religion, color, national origin, age, sex or handicap" to "race, sex, sexual orientation, national origin, citizenship, religion, age, veteran status, genetic information, pregnancy, handicap, or disability"); H.B. 186, 2017-2018 Gen. Assemb., Reg. Sess. (N.C. 2017) (same).

Adopting a theory of pregnancy discrimination enlarges the scope of § 143-422.2 beyond its text and would judicially recognize a cause of action the legislature has not enacted. Furthermore, aside from a criminal statute excepting breastfeeding women from indecent exposure prohibitions, plaintiff largely cites to executive orders, rather than statutes, to show the existence of a public policy protecting mothers from employment discrimination due to pregnancy. The language plaintiff offers is insufficient to point us to such a policy's expression.

As we will discuss later, this does not in itself prevent plaintiff from surviving a 12(b)(6) motion to dismiss if she adequately pleads a claim alleging wrongful discharge on the basis of sex. However, insofar as plaintiff's wrongful discharge claim is premised on discrimination due in particular to her pregnancy, miscarriage, or pregnancy-related medical leave, the trial court properly concluded that she failed to

allege a violation of a recognized North Carolina public policy or statute, and dismissal of that portion of her claim was appropriate.

### B.  Wrongful Discrimination Based on Disability

Plaintiff next argues that the trial court erred in dismissing her wrongful discharge claim to the extent it relied on allegations of disability discrimination. Again, we must conclude that dismissal of this claim was proper.

The NCEEPA establishes a public policy protecting employment opportunities without discrimination "on account of . . . handicap." N.C.G.S. § 143-422.2. The term "handicap" is defined within the Persons with Disabilities Protection Act ("NCPDPA"), N.C.G.S. § 168A-3(7), which limits the term to physical or mental impairments that substantially limit one or more major life activities and excludes temporary or transitory impairments of short duration. "[T]he remedial provisions of this statute are intended to aid only those who are presently disabled." *Burgess v. Joseph Schlitz Brewing Co.*, 298 N.C. 520, 528 (1979). Thus, to sustain a wrongful discharge action based on disability discrimination, a plaintiff must identify a public policy expressed in the North Carolina statutes or Constitution prohibiting discharge because of disability, while adequately pleading facts demonstrating that she had, had a record of, or was perceived as having a qualifying disability at the time of termination.

Here, plaintiff alleges that she experienced medical complications surrounding her miscarriage and required short-term remote work and recovery time. She does

not allege that these conditions persisted beyond several weeks or continued to affect her after she returned to the office, nor does she allege that defendant maintained knowledge of any ongoing physical or mental impairment at the time it made the termination decision. As such, these allegations are insufficient as a matter of law to establish a qualifying disability under § 168A-3(7). Thus, we conclude that plaintiff failed to plead facts demonstrating the existence of a legally cognizable disability at the time of her termination or that defendant was then aware of such a disability. Accordingly, we affirm the trial court's dismissal of plaintiff's disability-based argument for failure to state a claim upon which relief can be granted.

### C.     Wrongful Discharge based on Sex Discrimination

Plaintiff also argues that the trial court erred in dismissing her claim for wrongful discharge to the extent it alleges discrimination on the basis of sex in violation of the public policy expressed in N.C.G.S. § 143-422.2. We agree that plaintiff has adequately stated a claim under this theory and conclude that dismissal at the Rule 12(b)(6) stage was premature.

The NCEEPA expressly declares it the public policy of North Carolina to protect the right of individuals "to seek, obtain and hold employment without discrimination or abridgement on account of . . . sex." N.C.G.S. § 143-422.2. Clearly, a claim that defendant discharged plaintiff because of sex discrimination falls squarely within the text of the public policy identified by the General Assembly. Accordingly, at the pleading stage, plaintiff was required to include facts supporting

her claim that (1) she was a member of a protected class (women), (2) that she was qualified and met the expectations of the employment, and (3) that her employer terminated her. Plaintiff's complaint satisfied these first three prongs. Lastly, plaintiff is also required to include facts giving rise to an inference of discriminatory motive on the basis of sex, typically satisfied in federal jurisprudence with facts alleging that employees of the other sex were retained under similar circumstances. *See Gibson*, 308 N.C. at 137–38; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Here, plaintiff alleges that prior to disclosing her medical circumstances, she had been encouraged to expect rapid advancement within defendant's legal department. After returning from approved medical leave, she alleges a sudden and negative shift in management's attitude, including questioning of her professional reliability and honesty, statements indicating that she would need to "repair" her relationship with management, and rescission of previously communicated expectations regarding promotion. She further alleges that similarly situated male attorneys were not subject to comparable scrutiny or distrust, and that as the only woman working full-time in the department, she was singled out by this treatment and terminated shortly thereafter. She was terminated despite a highly positive performance evaluation the previous week, including the conclusion that her professionalism was exceeding expectations. In short, plaintiff alleges that she experienced a serious medical episode particular to her sex, that defendant imposed

requirements on her which it did not require of male co-workers who missed work or worked remotely due to medical matters, and that in the aftermath, defendant fired her for professionalism reasons, despite its recent evaluations taking no issue with her performance.

Taking plaintiff's allegations as true, as we must, they permit the reasonable inference that plaintiff's sex was plausibly a motivating factor in the termination decision. The complaint's alleged facts support other reasonable interpretations, to be sure, but this particular reasonable inference is what matters to survive defendant's motion to dismiss. Whether plaintiff can ultimately prove such a theory remains a matter for later discovery and fact-finding.

Defendant is correct that the General Assembly excluded a pregnancy-specific discrimination claim from its employment statutes, but this exclusion does not thereby extinguish all potentially litigable sex discrimination claims by women whose complaints plead some facts related to childbearing. Such a plaintiff may include such facts in her complaint if they support a reasonable inference that she suffered wrongful discharge on the basis of sex; if sufficient facts are so pled, her complaint should survive the pleading stage.

Workplace sex discrimination occurs and gives rise to a legitimate claim for relief, as our General Assembly intended. A plaintiff is not foreclosed from the benefit of inferences that may be drawn regarding allegations of sex discrimination, because as here, she also includes allegations regarding her pregnancy. Allegations in

pleadings regarding a woman's pregnancy could be relevant to and implicated in the allegations in her sex discrimination complaints, without her pregnancy being *itself* the reason for the defendant employer's allegedly adverse actions. In reading the complaint at issue here, the trial court was obligated to grant plaintiff this reasonable inference. Recognizing the viability of these complaints does not enlarge North Carolina's narrow public policy framework; such claims seek only the enforcement of our statutes, not their expansion.

Further, the fact that plaintiff alleges discrimination due to "sex and pregnancy" rather than just "sex" does not forestall this claim's survival of the pleading stage. A motion to dismiss asks whether the complaint's allegations are sufficient to state a litigable claim for relief under some legal theory, whether that theory is properly labeled or not. *Driver v. Burlington Aviation*, 110 N.C. App. 519 (1993). Where the legal theory is improperly labeled, what matters is whether the allegations supporting that legal theory nevertheless give sufficient notice of the wrong complained of. *McAllister v. Ha*, 347 N.C. 638 (1998). As discussed above, plaintiff alleged facts that, taken as true, were sufficient to support a reasonable inference that defendant discriminated against her on the basis of her sex. It is a question for determination at later procedural stages as to whether her sex was the motivating factor in defendant's decision to terminate her. It makes no difference here that she claims she suffered wrongful discharge due to "sex and pregnancy" and included facts about her pregnancy and miscarriage.

III.    Conclusion

Accordingly, we affirm dismissal as to plaintiff's pregnancy and disability-based claims and hold that the trial court erred in dismissing plaintiff's wrongful discharge claim based on sex discrimination pursuant to Rule 12(b)(6).  That portion of the lower court's Order must be reversed and the matter remanded for further proceedings.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Judges CARPENTER and WOOD concur.